IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HATICE CENGIZ, *et al.*, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-03009 |
| | ) | |
| MOHAMMED BIN SALMAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MOTION OF SAUD AL-QAHTANI AND AHMED AL-ASSIRI
TO DISMISS THE COMPLAINT AGAINST THEM

TABLE OF CONTENTS

Page

BACKGROUND ............................................................................................................................1

ARGUMENT .................................................................................................................................5

   I.  This Court lacks personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri. ........................5

      A.  *To establish personal jurisdiction, a plaintiff must allege specific acts connecting the defendant with the forum and may not rely on bare allegations or conclusory statements.* ........................5

      B.  *Neither Mr. Al-Qahtani nor Mr. Al-Assiri is alleged to have any suit-related connection with the United States.* ..............................7

      C.  *Plaintiffs' allegations about Mr. Khashoggi's alleged interactions with Saudi Embassy officials do not give rise to personal jurisdiction.* ..............................8

      D.  *The personal connections of Mr. Khashoggi and the Plaintiffs to the United States do not result in personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri.* ..............................9

      E.  *The Complaint's conclusory claim that the purported conduct was "directed and aimed at the United States" fails to establish personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri.* ..............................9

      F.  *Asserting jurisdiction over the Messrs. Al-Qahtani and Al-Assiri would offend notions of fair play and substantial justice.* ..............................11

      G.  *Plaintiffs fail to show pendent personal jurisdiction over Plaintiffs' non statutory claims.* ..............................12

   II.  The Act of State Doctrine bars Plaintiffs' claims. ..............................13

   III.  Saudi Arabia is an indispensable party that cannot be joined because it is immune from suit. ..............................13

   IV.  Plaintiff Cengiz fails to establish jurisdiction or state a cause of action under the Alien Tort Statute.13

      A.  *Plaintiff Cengiz is not an appropriate plaintiff to bring suit.* ..............................14

      B.  *Plaintiffs' claims are impermissibly extraterritorial.* ..............................14

      C.  *Claims based on secondary liability under the ATS should not be permitted and, in any event, Plaintiffs' secondary liability allegations do not sufficiently touch and concern the United States so as to displace the presumption against extraterritoriality, and they are not plausibly pled.* ..............................15

   V.  Plaintiff Cengiz is not the appropriate plaintiff under the TVPA; she has failed to state a claim; and secondary liability is not a cognizable claim under the TVPA ..............................17

   VI.  If the Court were to find it has personal and subject matter jurisdiction, the Complaint's federal claims should be dismissed because they are based on conclusory allegations. ..............................18

      A.  *The Complaint fails to allege the elements of a conspiracy claim against Mr. Al-Qahtani.* ..............................19

      B.  *The Complaint fails to allege the elements of aiding and abetting against Mr. Al-Qahtani.* ..............................21

      C.  *The Complaint fails to allege any facts from which Mr. Al-Assiri could be found secondarily liable for the conduct of others.* ..............................22

   VII.  If the Court dismisses the ATS and TVPA claims, the Court lacks jurisdiction over Plaintiffs' non-federal claims. ..............................22

VIII.    If the Court were to exercise jurisdiction over non-federal claims, they should be dismissed because each fails as a matter of law.................................................................................23

    A.    *The Complaint's Tortious Interference of Contract claim fails as a matter of law.* ...............23

    B.    *The Complaint's wrongful death claim fails as a matter of law.*............................................25

    C.    *The Complaint's intentional infliction of emotional distress claim fails as a matter of law.* ..................25

    D.    *The Complaint's loss of consortium fails as a matter of law*................................................25

    E.    *The Complaint's seventh claim, loss of society, fails as a matter of law*...............................25

CONCLUSION.................................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Acosta Orellana v. CropLife Int'l,*
   711 F. Supp. 2d 81 (D.D.C. 2010) ........................................................................... 20

*Adhikari v. Kellogg Brown & Root, Inc.,*
   845 F.3d 184 (5th Cir. 2017) ................................................................................... 16

*Agee v. Sebelius,*
   668 F. Supp. 2d 1 (D.D.C. 2009) ............................................................................. 5

*ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.,*
   293 F.3d 707 (4th Cir. 2002) ................................................................................... 6

*In re Aluminum Warehousing Antitrust Litig,*
   90 F. Supp. 3d 219 (S.D.N.Y. 2015) ........................................................................ 7

*Amidax Trading Grp. v. S.W.I.F.T. SCRL,*
   671 F.3d 140 (2d Cir. 2011) ................................................................................... 20

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.,*
   480 U.S. 102 (1987) .............................................................................................. 12

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .............................................................................................. 18

*Associated Producers, LTD v. Vanderbilt Univ.,*
   76 F. Supp. 3d 154 (D.D.C. 2014) ............................................................................ 8

*Atkins v. Fischer,*
   232 F.R.D. 116 (D.D.C. 2005) ................................................................................. 20

*Atlantigas Corp. v. Nisource, Inc.,*
   290 F. Supp. 2d 34 (D.D.C. 2003) ....................................................................... 5, 7

*Bastin v. Fannie Mae,*
   104 F.3d 1392 (D.C. Cir. 1997) ............................................................................... 6

*Beanal v. Freeport-McMoran, Inc.,*
   197 F.3d 161 (5th Cir. 1999) ................................................................................... 19

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .............................................................................................. 18

*Bell v. Ivory,*
    966 F. Supp. 23 (D.D.C. 1997), aff'd, 1998 WL 388499 (D.C. Cir. May 13, 1998),
    *rev'd on other grounds and remanded,* 850 F.3d 461 (D.C. Cir. 2017) ....................................... 24

*Cabello v. Fernandez-Larios,*
    402 F.3d 1148 (11th Cir. 2005) ....................................................................................... 19

*Calder v. Jones,*
    465 U.S. 783 (1984) ........................................................................................................ 10

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,*
    334 F.3d 390 (4th Cir. 2003) ............................................................................................. 6

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994) ........................................................................................................ 17

*Cockrum v. Donald J. Trump for President, Inc.,*
    319 F. Supp. 3d 158 (D.D.C. 2018) ................................................................................... 8

*Corrie v. Caterpillar, Inc.,*
    403 F. Supp. 2d 1019 (W.D. Wash. 2005) aff'd, 503 F.3d 974 (9th Cir. 2007) ................. 18

*District of Columbia v. Precision Contracting Sols., LP,* No. 2019 CA 005047 B, 2020 D.C.
    Super. LEXIS 31 (June 25, 2020) .................................................................................... 23

*Doe v. Buratai,*
    318 F. Supp. 3d 218 (D.D.C. 2018) ................................................................................. 11

*Doe v. Buratai,*
    792 F. App'x 6 (D.C. Cir. 2019) ..................................................................................... 11

*Doe v. Exxon Mobil Corp.,*
    2015 WL 5042118 (D.D.C. July 6, 2015) (*Exxon III*) ...................................................... 21

*Doe v. Exxon Mobil Corp.,*
    654 F.3d 11 (D.C. Cir. 2011)(*Exxon II*) ............................................................... 15, 18, 21

*Duarte v. Nolan,*
    190 F. Supp. 3d 8 (D.D.C. 2016) ....................................................................................... 7

*EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.,*
    246 F. Supp. 3d 52 (D.D.C. 2017) ............................................................................. 23, 24

*FC Inv. Grp. LC v. IFX Mkts., Ltd.,*
    529 F.3d 1087 (D.C. Cir. 2008) ........................................................................................ 6

*First Chicago Int'l v. United Exch. Co., Ltd.,*
    836 F.2d 1375 (D.C. Cir. 1988) ........................................................................................ 8

*Gregory v. Mihaylov,*
No. 1:12-CV-2266-TWT, 2013 U.S. Dist. LEXIS 1251 (N.D. Ga. Jan. 4, 2013)...........................5

*Halberstam v. Welch,*
705 F.2d 472 (D.C. Cir. 1983) ..................................................................................... 19, 21

*Indem. Ins. Co. of N. Am. v. K-Line Am., Inc.,*
2007 U.S. Dist. LEXIS 43567 (S.D.N.Y. June 13, 2007) ....................................................5

*In re Investment Tech. Grp., Inc. Sec. Litig.,*
251 F. Supp. 3d 596 (S.D.N.Y. 2017)..............................................................................20

*Jara v. Núñez,*
878 F.3d 1268 (11th Cir. 2018) ......................................................................................15

*Jaramillo v. Naranjo,*
No. 10-21951-CIV, 2014 U.S. Dist. LEXIS 138887 (S.D. Fla. Sep. 30, 2014) ................15

*Jazini by Jazini v. Nissan Motor Co.,*
148 F.3d 181 (2d Cir. 1998) .............................................................................................6

*Kareem v. Haspel,*
986 F.3d 859 (D.C. Cir. 2021) .......................................................................................24

*Khatib v. All. Bankshares Corp.,*
846 F. Supp. 2d 18 (D.D.C. 2012) ....................................................................................8

*Kiobel v. Royal Dutch Petro. Co.,*
569 U.S. 108 (2013)........................................................................................................14

*Estate of Klieman v. Palestinian Auth.,*
923 F.3d 1115 (D.C. Cir. 2019) ......................................................................................11

*Livnat v. Palestinian Auth.,*
851 F.3d 45 (D.C. Cir. 2017) ..........................................................................................11

*Manouchehr Mohammadi v. Islamic Republic of Iran,*
947 F. Supp. 2d 48 (D.D.C. 2013)), aff'd, No. 18-7170, 2019 WL 668339 (D.C.
Cir. Feb. 15, 2019)..........................................................................................................11

*Marsoun v. United States,*
525 F. Supp. 2d 206 (D.D.C. 2007) ..................................................................................5

*Mastafa v. Chevron Corp.,*
759 F. Supp. 2d 297 (S.D.N.Y. 2010)..............................................................................18

*Mastafa v. Chevron Corp.,*
770 F.3d 170 (2d Cir. 2014) ............................................................................................16

*Morrison v. National Australia Bank*,
    561 U.S. 247 (2010)...............................................................................14

*Mwani v. bin Laden*, 417 F.3d 1 (D.C.Cir.2005)..................................................5

*Nanko Shipping, USA v. Alcoa, Inc.*,
    107 F. Supp. 3d 174 (D.D.C. 2015)...............................................................24

*Nat'l Resident Matching Program v. Elec. Residency LLC*,
    720 F. Supp. 2d 92 (D.D.C. 2010)..................................................................5

*Nikbin v. Islamic Republic of Iran*,
    471 F. Supp. 2d 53 (D.D.C. 2007)................................................................11

*Nyambael v. AlliedBarton Sec. Servs.*,
    LLC, 153 F. Supp. 3d 309 (D.D.C. 2016)........................................................24

*Ofisi v. BNP Paribas, S.A.*,
    2018 WL 396234 (D.D.C. Jan. 11, 2018).......................................................7, 22

*Ofisi v. BNP Paribas, S.A.*,
    278 F. Supp. 3d 84 (D.D.C. 2017), vacated in part on other grounds, 285 F.
    Supp. 3d 240 (D.D.C. 2018) ....................................................................21, 22

*Owens v. BNP Paribas, S.A.*,
    897 F.3d 266 (D.C. Cir. 2018) ..................................................................17, 18

*Price v. Socialist People's Libyan Arab Jamahiriya*,
    294 F.3d 82 (D.C. Cir. 2002) .......................................................................11

*RJR Nabisco, Inc. v. European Community*,
    579 U.S. 325 (2016)..............................................................................1, 16

*Shatsky v. PLO*,
    955 F.3d 1016 (D.C. Cir. 2020) ....................................................................11

*Sikhs for Justice v. Nath*,
    893 F. Supp. 2d 598 (S.D.N.Y. 2012)..............................................................17

*Sinaltrainal v. Coca-Cola Co.*,
    578 F.3d 1252 (11th Cir. 2009), *abrogated on other grounds* by *Mohamad v. Palestinian
    Authority*, 566 U.S. 449 (2012) ...................................................................19

*Snow v. DirecTV*,
    450 F.3d 1314 (11th Cir. 2006) .....................................................................5

*Tolton v. Day*,
    Civil Action No. 19-945 (RDM), 2020 U.S. Dist. LEXIS 87793 (D.D.C. May 19,
    2020)................................................................................................18

*United States v. La Jeune Eugenie,*
    26 F. Cas. 832 (CC. Mass. 1822) ................................................................................14

*Walden v. Fiore,*
    571 U.S. 277 (2014) ...................................................................................... 6, 9, 10

*Walker v. S.W.I.F.T. SCRL,*
    517 F. Supp. 2d 801 (E.D. Va. 2007) ..........................................................................20

*Warfaa v. Ali,*
    33 F. Supp. 3d 653 (E.D. Va. July 9, 2014) ................................................................14

*Weishapl v. Sowers,*
    771 A.2d 1014 (D.C. 2001) .........................................................................................23

*Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of N.Y., Inc.,*
    889 F. Supp. 2d 912 (S.D. Tex. 2012) .........................................................................18

## Statutes

28 U.S.C. § 1350 ..................................................................................................... 4, 18

28 U.S.C. § 1367 ...........................................................................................................4

Torture Victims Protection Act, 28 U.S.C. § 1350 note .............................................4

## Other Authorities

Fed. R. Civ. Proc. 4(k)(2) ...................................................................................... 4, 23

*How the Man Behind Khashoggi Murder Ran the Killing Via Skype,* Reuters (Oct. 22, 2018) .........................3

Souad Mekhennet & Greg Miller, *Jamal Khashoggi's Final Months as an Exile in the Long
    Shadow of Saudi Arabia,* Wash. Post (Dec. 22, 2018) .............................................2

Jamal Khashoggi's tragic death did not involve the United States.  Sensational allegations related to his death do not abrogate the requirements that a Court have personal jurisdiction over defendants and subject matter over the claims, or obviate the basic legal principle that a civil action must be based on more than unsupported conclusions, but rather must allege specific facts that plausibly could establish each of the elements of the claims asserted.  The Complaint, brought by Hatice Cengiz and Democracy for the Arab World Now (DAWN), alleges that Saud Al-Qahtani and Ahmed Al-Assiri, citizens and residents of Saudi Arabia who were officials of the Saudi government, participated from Saudi Arabia in a plot to kill Jamal Khashoggi at the Saudi consulate in Turkey.  "It is a basic premise of our legal system that, in general, United States law governs domestically but does not rule the world."  *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 136 S. Ct. 2090, 2100 (2016)(internal quotations omitted).

Messrs. Al-Qahtani and Al-Assiri deny the salacious allegations made against them.  The Complaint must be dismissed for multiple reasons: this Court lacks personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri; the Act of State Doctrine bars the Plaintiffs' claims; Saudi Arabia is an indispensable party that cannot be joined because it is immune from suit; Plaintiff Cengiz fails to establish jurisdiction or state a cause of action under the Alien Tort Statute ("ATS"); Plaintiff Cengiz is not the appropriate plaintiff under the Torture Victims Protection Act ("TVPA") and has failed to state a TVPA claim;  the Complaint's federal claims are based on conclusory allegations and, as a result, the Court lacks jurisdiction over the Plaintiffs' non-federal claims; and the non-federal claims should be dismissed because each fails as a matter of law.

## BACKGROUND

Messrs. Al-Qahtani and Al-Assiri incorporate and adopt by reference the introduction, supporting factual declarations, and summary thereof set forth in the Crown Prince's Motion to Dismiss.  *See* pp. 1-7 with declarations and exhibits.

The Complaint makes conclusory allegations--largely based on media reports rather than any first-hand knowledge--that Mr. Al-Qahtani and Mr. Al-Assiri, two Saudi government officials living in the Kingdom of Saudi Arabia, purportedly acting at the behest of His Royal Highness Mohammed bin Salman bin Abdulaziz Al Saud, the Crown Prince of the Kingdom of Saudi Arabia ("the Crown Prince"), in some unspecified manner took part in a conspiracy to murder Mr. Khashoggi.  The Complaint does not allege contacts between Mr. Al-Qahtani and Mr. Al-Assiri and the United States. Its allegations of conduct of others in the United States do not result in this Court having personal jurisdiction over them.

*Mr. Al-Qahtani*

The Complaint makes the conclusory allegation that Mr. Al-Qahtani was a "co-conspirator" in a plot to kill Mr. Khashoggi.  The Complaint cites to the conclusion of the Office of Foreign Assets Control's that Mr. Al-Qahtani "was part of the planning and execution of the operation that led to the killing of Mr. Khashoggi." *Id.*¶154.

In support of this allegation, the Complaint asserts that Mr. Al-Qahtani ran media operations for the royal court and served as a trusted advisor to the Crown Prince*, see* Compl., ECF No. 1, ¶10, ¶57 (characterizing Mr. Al-Qahtani as the Crown Prince's "enforcer" and "loyal lieutenant").  The Complaint alleges, based on a media report, that Mr. Al-Qahtani advised Mr. Khashoggi while he was in Qatar that that he was "not allowed to tweet, not allowed to write, not allowed to talk" and added "You can't do anything anymore—you're done."[1]  The Complaint references this same news article alleging that Mr. Al-Qahtani urged Mr. Khashoggi to "keep writing and boasting" about the Crown

---

[1] *Id.*, ¶50 (citing Souad Mekhennet & Greg Miller, *Jamal Khashoggi's Final Months as an Exile in the Long Shadow of Saudi Arabia*, Wash. Post (Dec. 22, 2018), https://www.washingtonpost.com/world/national-security/jamal-khashoggis-final-months-anexile-in-the-long-shadow-of-saudi-arabia/2018/12/21/d6fc68c2-0476-11e9-b6a9-0aa5c2fcc9e4_story.html).

Prince's achievements. *Id.*, ¶57.  The Complaint asserts that in 2017 or 2018 Mr. Al-Qahtani offered Mr. Khashoggi a job in Saudi Arabia and requested he return.  *See id.*, ¶81.

The Complaint offers rank speculation that Mr. Khashoggi's appointment at the consulate on October 2, 2018 was conveyed to Mr. Al-Qahtani.  *Id.*, ¶102 (alleging "presumably" this was the case).  Citing yet another news article, which itself is based on unnamed Turkish and Arab "sources," the Complaint alleges Mr. Al-Qahtani via Skype from Saudi Arabia called the Saudi consulate in Istanbul after Mr. Khashoggi's death and stated, "Bring me the head of the dog." *Id.* at ¶131 (citing *How the Man Behind Khashoggi Murder Ran the Killing Via Skype*, Reuters (Oct. 22, 2018), https://www.reuters.com/article/us-saudi-khashoggi-adviser-insight/how-the-man-behindkhashoggi-murder-ran-the-killing-via-skype-idUSKCN1MW2HA).

As set forth below, the Court, in determining whether a complaint states an offense, cannot credit allegations based solely on media reports.  Even if the Plaintiffs had a basis to make these allegations other than having read them in the media, however, none of the factual allegations in the Complaint, if true, would plausibly support the Complaint's conclusory allegation that Mr. Al-Qahtani planned and executed a plot to kill Mr. Khashoggi.  None of the allegations of conduct by Mr. Al-Qahtani preceding the death of Mr. Khashoggi implicate him in a plot to murder Mr. Khashoggi.  Indeed, the only factual allegation related directly to Mr. Khashoggi's murder is a media account of Mr. Al-Qahtani communicating with some unidentified person in the Consulate *after* Mr. Khashoggi was murdered.  In any event, the Complaint alleges no contacts by Mr. Al-Qahtani with the United States.

### Mr. Al-Assiri

The allegations against Mr. Al-Assiri are even sparser.  The Complaint alleges Mr. Al-Assiri was the Deputy Director of the Saudi General Intelligence Presidency and a Saudi Major General.  *See id.*, ¶11.  With nothing more, the Complaint baldly states, "on information and belief," Mr. Al-Assiri

"planned" and "organized" the group in Saudi Arabia that ultimately traveled to Turkey and killed Mr. Khashoggi.  *Id.*  The Complaint alleges no contacts by Mr. Al-Assiri with the United States.

         *             *             *             *             *

The Complaint asserts that Messrs. Al-Qahtani and Al-Assiri's purported conduct gives rise to seven causes of actions.  The first two are federal claims: an alleged violation of the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350; and an alleged violation of the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350 note. *See id.*  ¶¶163-83.  The remaining five are non-federal claims: Tortious Interference of Contract; Wrongful Death; Intentional Infliction of Emotional Distress, Including Solatium; Loss of Consortium; Loss of Society.  *See id.* ¶¶184-218.  For the Complaint's five non-federal claims, the Plaintiffs allege pendent jurisdiction under 28 U.S.C. § 1367, asserting that they arise from a common nucleus of facts with the two federal claims.  *See id.*, ¶37.

For the federal causes of action, the Complaint asserts personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri under Fed. R. Civ. Proc. 4(k)(2).  *See id.*, ¶39.  It claims that contacts with the United States by "Defendants" constituted key steps in the plot, without articulating any such contacts by Mr. Al-Qahtani or Mr. Al-Assiri.  *See id.*, ¶40.  The Complaint alleges that "Defendants" blocked efforts by Mr. Khashoggi to retrieve a document from the Saudi Embassy in Washington, D.C., which it says then forced him to seek the document in Turkey. *See id.* In fact, the Saudi Embassy in Washington, D.C. *cannot* issue this marriage document Turkish authorities would accept.  *See* Crown Prince Mot. to Dismiss, pp. 6-14 (adopted and incorporated by reference).  The Complaint also alleges that the U.S.-based Saudi Ambassador falsely claimed that Mr. Khashoggi would be safe inside the Consulate in Istanbul.  *See* Compl. ¶40.; *but see* Crown Prince Mot. to Dismiss, pp. *id.* (citing Prince Khalid bin Salman Abdulaziz Decl).  Regardless, the Complaint fails to allege that Mr. Al-Qahtani or Mr. Al-Assiri personally had any contacts with either the Saudi Embassy or the Saudi Ambassador in the United States.

The Complaint also alleges that the purported conduct was aimed at the United States, because Mr. Khashoggi was a resident of the United States and the Executive Director of DAWN, which is a U.S.-based organization. The Complaint, however, does not allege that Mr. Al-Qahtani or Mr. Al-Assiri knew that Mr. Khashoggi was affiliated with DAWN or even knew of DAWN's existence.

## ARGUMENT

### I.   This Court lacks personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri.

Messrs. Al-Qahtani and Al-Assiri incorporate and adopt by reference the legal standard and arguments that this Court lacks personal jurisdiction over the Defendants set forth in the Crown Prince's Motion to Dismiss, pp. 8-19.

> A.   *To establish personal jurisdiction, a plaintiff must allege specific acts connecting the defendant with the forum and may not rely on bare allegations or conclusory statements.*

As this Court has held: "'Plaintiff[s] bear[] the burden of establishing personal jurisdiction, and must allege specific facts on which personal jurisdiction can be based; [they] cannot rely on conclusory allegations." *Marsoun v. United States*, 525 F. Supp. 2d 206, 211 (D.D.C. 2007) (Bates, J.) (citing *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C.Cir.2005)); *see also Nat'l Resident Matching Program v. Elec. Residency LLC*, 720 F. Supp. 2d 92, 99 (D.D.C. 2010) ("vague and conclusory allegations do not suffice to demonstrate that a defendant is subject to personal jurisdiction in a particular forum.") (citing *Agee v. Sebelius*, 668 F. Supp. 2d 1, 5-6 (D.D.C. 2009)); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 44-46 (D.D.C. 2003) (same); *see also, e.g., Gregory v. Mihaylov*, No. 1:12-CV-2266-TWT, 2013 U.S. Dist. LEXIS 1251, at *13-14 (N.D. Ga. Jan. 4, 2013)("The Court will not credit conclusory allegations in determining whether the Plaintiff has established personal jurisdiction over the [] Defendants.")(citing *Snow v. DirecTV*, 450 F.3d 1314, 1318 (11th Cir. 2006) (rejecting conclusory allegations in personal jurisdiction inquiry)); *Indem. Ins. Co. of N. Am. v. K-Line Am., Inc.*, 2007 U.S. Dist. LEXIS 43567, at *13 (S.D.N.Y.

June 13, 2007)("Mere conclusory allegations are insufficient to support a prima facie showing of personal jurisdiction.") (citing *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).[2]

Because the Complaint does not purport to allege general jurisdiction over Messrs. Al-Qahtani and Al-Assiri, in order to survive a motion to dismiss, it must make non-conclusory factual allegations that, if true, would plausibly establish that this Court has specific personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri.  Specific personal jurisdiction exists only when the cause of action arises from or relates to the defendant's contacts with the jurisdiction.  *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").  The Complaint fails to make specific factual allegations that could plausibly establish specific personal jurisdiction with respect to Messrs. Al-Qahtani and Al-Assiri.

---

[2]  Conclusory allegations also do not suffice to entitle the plaintiff to take discovery in an effort to establish personal jurisdiction.  *See FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008)("Such a request for jurisdictional discovery cannot be based on mere conjecture or speculation.") (citing *Bastin v. Fannie Mae*, 104 F.3d 1392, 1396 (D.C. Cir. 1997)); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 403 (4th Cir. 2003) ("where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.")(citation omitted); *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 716 n.3 (4th Cir. 2002) (affirming district court's denial of plaintiff's request to engage in jurisdictional discovery based on "conclusory assertions").

B.      *Neither Mr. Al-Qahtani nor Mr. Al-Assiri is alleged to have any suit-related connection with the United States.*

The Complaint baldly states, "[t]his suit arises out of and relates to Defendants' contacts with the United States."  It then explains that these "contacts" are the Saudi Embassy in Washington, D.C., which allegedly denied Mr. Khashoggi documents that forced him to go to the Saudi Consulate in Istanbul, and the U.S.-based Saudi Ambassador, who reassured Mr. Khashoggi of his safety while there.  *See* Compl., ¶¶38, 40.  Even if these allegations were true, (they are not, *see* Crown Prince Mot. to Dismiss, pp. 6-14.), the Complaint does not include any plausible factual allegation that either Mr. Al-Qahtani or Mr. Al-Assiri themselves had any contact with the Saudi Embassy in Washington, D.C. or the U.S.-based Saudi Ambassador.  Thus, even if other defendants had case-related contacts with the Embassy or the Ambassador in the United States, this Court lacks personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri.  *See Duarte v. Nolan*, 190 F. Supp. 3d 8, 11 (D.D.C. 2016) ("a plaintiff 'cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant") (quoting *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

To the extent the Plaintiffs attempt to rely on personal jurisdiction based on conspiracy, this is a dubious legal concept.  *See Ofisi v. BNP Paribas, S.A.*, 2018 WL 396234, at *5 (D.D.C. Jan. 11, 2018) ("[a]s far as the Court is aware, no court to have considered the question has permitted the assertion of conspiracy jurisdiction under Rule 4(k)(2)."); *see also In re Aluminum Warehousing Antitrust Litig*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (explaining that interpreting Rule 4(k)(2) to include "assertion of participation in a conspiracy generally" as "a standalone basis for jurisdiction" would "potentially expand jurisdiction beyond that which Congress intended").  In any event, the Complaint fails to allege any agreement by either Mr. Al-Qahtani or Mr. Al-Assiri with any individual in the United States.  Even if the Complaint plausibly connected the Saudi Embassy and the Saudi Ambassador to a plot to kill Mr. Khashoggi, which it does not, the Complaint makes no factual

allegation that either Mr. Al-Qahtani or Mr. Al-Assiri communicated with, let alone entered into an agreement with, the Embassy or the Ambassador to participate together in such a plot. Nor does it allege that Mr. Al-Qahtani or Mr. Al-Assiri knew of the actions of the Saudi Embassy and Saudi Ambassador supposedly connected to a plot to kill Mr. Khashoggi. *See Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158 (D.D.C. 2018)("Adopting the approach taken by Judge Mehta [in *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*], this Court concludes that if any conspiratorial jurisdiction survives *Walden*, a plaintiff pursuing such a theory must allege that the defendant knew of the co-conspirator's acts in the forum. Furthermore, at the very least, a plaintiff needs to meet the Circuit's strict particularity requirement to comport with due process.").

An agency relationship exists when "one person authorizes another to act on his behalf subject to his control, and the other person consents to do so." *Associated Producers, LTD v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, 166 (D.D.C. 2014). However, a "bare allegation of . . . agency is insufficient to establish personal jurisdiction." *Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18, 33 (D.D.C. 2012) (quoting *First Chicago Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988). The Complaint fails to allege specific facts that, if true, would plausibly establish an agency relationship between Mr. Al-Qahtani or Mr. Al-Assiri and the Saudi Ambassador or anyone at the Saudi Embassy. The Complaint does not allege any facts that could plausibly establish that Mr. Al-Qahtani or Mr. Al-Assiri authorized anyone in the United States to do anything or that someone in the United States agreed to act on their behalf.

C.      *Plaintiffs' allegations about Mr. Khashoggi's alleged interactions with Saudi Embassy officials do not give rise to personal jurisdiction.*

Messrs. Al-Qahtani and Al-Assiri incorporate and adopt by reference the legal standards and arguments that Mr. Khashoggi's alleged interactions with Saudi Embassy officials do not establish jurisdiction as set forth in the Crown Prince's Motion to Dismiss, pp. 9-14.

D.      *The personal connections of Mr. Khashoggi and the Plaintiffs to the United States do not result in personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri.*

Messrs. Al-Qahtani and Al-Assiri incorporate and adopt by reference the legal standards and arguments that Mr. Khashoggi's own connections to the United States do not establish jurisdiction as set forth in the Crown Prince's Motion to Dismiss, pp. 14-17.

The Complaint refers to the connections of the *Plaintiffs* and *Mr. Khashoggi* to the United States. *See e.g.* Compl. ¶41 ("Mr. Khashoggi was a U.S. resident and widely-respected journalist and advocate who had become the Executive Director of Plaintiff DAWN, which is incorporated in the United States with its principal offices in Washington, D.C."); ¶169 ("The Defendants' wrongful actions also directly harmed Plaintiff DAWN, which is incorporated in the United States, and Plaintiff Cengiz, who had intended to reside principally in the United States after her marriage to Mr. Khashoggi."). The focus of personal jurisdiction, however, is "contacts that the 'defendant himself' creates with the forum"; a defendant's "knowledge" of someone else's "strong forum connections" does not create personal jurisdiction. *Walden*, 571 U.S. at 284. Only alleged contacts by Messrs. Al-Qahtani or Al-Assiri, not contacts by Mr. Khashoggi or the Plaintiffs, could establish personal jurisdiction over Messrs. Al-Qahtani or Al-Assiri. And, as set forth above, no such contacts have been adequately pled.

E.      *The Complaint's conclusory claim that the purported conduct was "directed and aimed at the United States" fails to establish personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri.*

Finally, the Complaint alleges that the purported conduct of Messrs. Al-Qahtani and Al-Assiri was directed and aimed at the United States. *See e.g.* Comp., ¶41 ("[T]he Defendants' actions were directed and aimed at the United States in critical respects. Mr. Khashoggi was a U.S. resident and widely-respected journalist and advocate who had become the Executive Director of Plaintiff DAWN, which is incorporated in the United States with its principal offices in Washington, D.C. On information and belief, each Defendant was aware of Mr. Khashoggi's U.S. ties and brutally killed Mr. Khashoggi to silence him and prevent him from continuing in the United States his advocacy for

democracy in the Arab world."). This conclusory allegation fails to establish personal jurisdiction as the Crown Prince discusses in his Motion to Dismiss, which Messrs. Al-Qahtani and Al-Assiri adopt and incorporate by reference. *See* Crown Prince Mot. to Dismiss, pp. 15-17 (explaining that the attack on Khashoggi was not aimed at the United States under the "effects test" outlined in *Calder v. Jones*, 465 U.S. 783 (1984) and *Walden*, 571 U.S. at 287-88).

The conclusory allegation is also undercut by the Complaint's own claims describing the Crown Prince's alleged effort to consolidate his own power in Saudi Arabia, *see e.g.* Compl., ¶80 ("Mr. Khashoggi's efforts with DAWN were perceived by Defendants as contrary to their pecuniary and other interests and posed an existential threat to Defendant MBS' plans to secure power as an autocrat."). *See id.*, ¶¶46-47, 52, (describing Mr. Khashoggi's work as advocating for democracy in the Arab word); ¶59 (describing DAWN's mission as aimed at the Arab World); ¶78 (discussing "…Mr. Khashoggi's use of his position with Plaintiff DAWN as a platform to bring democracy and greater human rights observance throughout the Arab world, and especially in the Kingdom."). In fact, the Complaint claims that Mr. Al-Qahtani "urged Mr. Khashoggi to 'keep writing and boasting' about MBS' achievements" *id.*, ¶57, an allegation consistent with the other efforts outlined in the Complaint to bolster the standing of the Crown Prince in Saudi Arabia, rather than his standing in the United States.

The Complaint, even if it alleged that the conduct of other defendants was aimed at the United States, fails to make any plausible allegation that the conduct of Mr. Al-Qahtani or Mr. Al-Assiri in particular was aimed at the United States. As noted above, the Complaint does not allege that *these* defendants were even aware of the existence of DAWN, much less motivated by an effort to undermine it. Regardless, even if the Complaint plausibly supported an allegation that Messrs. Al-Qahtani and Al-Assiri had an objective aimed at the United States, an alleged effort to achieve that objective by people outside of the United States by taking tortious action outside of the United Sates

against a person located outside the United States cannot establish personal jurisdiction in this Court. *See Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1124 (D.C. Cir. 2019); *Shatsky v. PLO*, 955 F.3d 1016, 1037 (D.C. Cir. 2020) (rejecting arguments that terrorist attacks in the West Bank were directed at the United States, even though American citizens were injured or killed in the attacks and even though the plaintiffs proffered evidence that Palestinian groups engaged in terrorism in efforts to affect United States policy); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (same). Thus, even if Mr. Khashoggi were a United States citizen, rather than a United States resident and international journalist, a foreign-based effort to silence him by taking action against him outside the United States would not result in personal jurisdiction in the United States. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002) ("tortur[ing] two American citizens in Libya' would be 'insufficient to satisfy the usual 'minimum contacts' requirement' for personal jurisdiction"); *see also Doe v. Buratai*, 318 F. Supp. 3d 218, 228 (D.D.C. 2018) ("acts of terror or torture committed against American citizens abroad, standing alone, can support personal jurisdiction only if the defendant expressly intended the effects of the act to be felt in the United States") (citing *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 73 (D.D.C. 2007); *Manouchehr Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 73 n.26 (D.D.C. 2013)), aff'd, No. 18-7170, 2019 WL 668339 (D.C. Cir. Feb. 15, 2019) (per curiam), and aff'd sub nom. *Doe v. Buratai*, 792 F. App'x 6 (D.C. Cir. 2019) (per curiam); *see also* Crown Prince Mot. to Dismiss, pp. 14-15 (adopted and incorporated by reference).

      F.      *Asserting jurisdiction over the Messrs. Al-Qahtani and Al-Assiri would offend notions of fair play and substantial justice.*

Messrs. Al-Qahtani and Al-Assiri incorporate and adopt by reference the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that asserting jurisdiction over the Defendants would offend notions of fair play and substantial justice. *See* Crown Prince Mot. to Dismiss, pp. 17-19.

Messrs. Al-Qahtani and Al-Assiri are citizens and residents of the Kingdom of Saudi Arabia with no ties to the United States.  The burden on them would be severe if they were required to "submit its dispute to a foreign nation's judicial system."  *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

Additionally, the forum the Plaintiffs selected – the United States – has far less interest in this litigation than other, more appropriate forums and the Plaintiffs have no special interest in seeking relief in the United States.  Plaintiff Cengiz is a native citizen of Turkey and currently resides in Istanbul. *See* Compl., ¶165.  Plaintiff DAWN, while headquartered in the United States, is an organization whose focus to promote democratic reform in the Arab world.  *See* Compl., ¶7.  Both Plaintiffs allege tortious conduct that occurred outside of the United States.  The Complaint fails to allege any facts that, if true, would plausibly establish the United States would be a convenient forum in which to litigate their claims.  For the reasons the Crown Prince sets forth in his Motion to Dismiss, pp. 17-19, both Turkey, where Plaintiff Cengiz is a citizen and currently resides, and where Mr. Khashoggi's death occurred, as well as Saudi Arabia, where all the Defendants are reside and are citizens and the purported plot is alleged to have been planned, have a stronger connection to this suit than the United States.  Haling Messrs. Al-Qahtani and Al-Assiri into court in the United States would offend notions of fair play and substantial justice.

G.    *Plaintiffs fail to show pendent personal jurisdiction over Plaintiffs' non statutory claims.*

Messrs. Al-Qahtani and Al-Assiri incorporate and adopt by reference the legal standards and arguments that Plaintiffs fail to show pendent personal jurisdiction for their non-federal claims as set forth in the Crown Prince's Motion to Dismiss, p. 19, because Plaintiffs fail to establish personal jurisdiction and because as set forth *infra*, Plaintiffs' claims fail for other reasons.

II.     **The Act of State Doctrine bars Plaintiffs' claims.**

Messrs. Al-Qahtani and Al-Assiri adopt and incorporate by reference the legal standards and arguments set forth in the Crown Prince's Motion to Dismiss that Plaintiffs' claims are barred by the Act of State Doctrine.  *See* Crown Prince's Mot. to Dismiss, pp. 23-27.  As with the Crown Prince, the Plaintiffs' theory of jurisdiction over Messrs. Al-Qahtani and Al-Assiri relies on allegations that "Defendants" ensured that Mr. Khashoggi could not obtain a certificate of marriage eligibility at the Saudi Embassy in Washington, D.C. and that "Defendants" arranged for the U.S.-based Saudi Ambassador to communicate to Mr. Khashoggi he would be safe while retrieving the document in Istanbul *See e.g.* Compl. ¶40.  Those allegations are conclusory and, even if taken as true, describe acts of the Saudi state that are not subject to oversight by this Court.  *See* Crown Prince's Mot. to Dismiss, pp. 23-27.

III.    **Saudi Arabia is an indispensable party that cannot be joined because it is immune from suit.**

Messrs. Al-Qahtani and Al-Assiri adopt and incorporate by reference the legal standards and arguments set forth in the Crown Prince's Motion to Dismiss (pp. 28-34) that Plaintiffs' claims must be dismissed because Saudi Arabia is a necessary and indispensable party that cannot be joined because it is immune from suit.

IV.     **Plaintiff Cengiz fails to establish jurisdiction or state a cause of action under the Alien Tort Statute.**

Messrs. Al-Qahtani and Al-Assiri adopt, and incorporate by reference, the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that the Complaint's ATS claim fails to establish jurisdiction or state a cause of action under the ATS.  *See* Crown Prince Mot. to Dismiss, pp. 46-50.

A.      *Plaintiff Cengiz is not an appropriate plaintiff to bring suit.*

Messrs. Al-Qahtani and Al-Assiri adopt, and incorporate by reference, the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that Plaintiff Cengiz is not an appropriate plaintiff to bring suit for the ATS claim.  *See* Crown Prince Mot. to Dismiss, p. 47.

B.      *Plaintiffs' claims are impermissibly extraterritorial.*

Messrs. Al-Qahtani and Al-Assiri adopt, and incorporate by reference, the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that Plaintiff's claims are impermissibly extraterritorial.  *See* Crown Prince Mot. to Dismiss, pp. 47-50. "[T]here is no indication that the ATS was passed to make the United States a uniquely hospitable forum for the enforcement of international norms.  As Justice Story put it, 'No nation has ever yet pretended to be the custos morum of the whole world . . . .'"  *Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108, 123 (2013) (citing *United States v. La Jeune Eugenie*, 26 F. Cas. 832, 847 (No. 15,551) (CC. Mass. 1822)).  In fact, "It is implausible to suppose that the First Congress wanted their fledgling Republic — struggling to receive international recognition — to be the first.  Indeed, the parties offer no evidence that any nation, meek or mighty, presumed to do such a thing."  *Id.*

In *Kiobel*, the Supreme Court was unequivocal and clear:

> [T]he presumption against extraterritoriality applies to claims under the ATS, and that nothing in the statute rebuts that presumption.  '[T]here is no clear indication of extraterritoriality here,' *Morrison* [*v. National Australia Bank*, 561 U.S. 247] 265 [(2010)] and petitioners' case seeking relief for violations of the law of nations occurring outside the United States is barred.

*Id.*

Courts have routinely dismissed claims brought under the ATS seeking extraterritorial application.  For example, in *Warfaa v. Ali*, 33 F. Supp. 3d 653 (E.D. Va. July 9, 2014), a Somalian native and citizen who alleged he had been tortured in Somalia and left for dead brought claims under the ATS.  The defendant was also a Somalian native and citizen, but was residing in the United States

14

at the time of the case.  The Court nonetheless dismissed the victim's ATS claim because the alleged tortious conduct occurred extraterritorially, in Somalia.

Similarly, in *Jaramillo v. Naranjo*, No. 10-21951-CIV, 2014 U.S. Dist. LEXIS 138887, at *16 (S.D. Fla. Sep. 30, 2014), the court said: "There is no choice but to apply the presumption against extra-territoriality given the allegations in this complaint, which involve Colombian actors engaged in Colombian murders against Colombian victims to further Colombian interests."  The court noted that that the interests of the United States were certainly involved, but held that those interests "are wholly insufficient to overcome the extra-territorial nature of the crimes alleged."  *Id.*; *see also Jara v. Núñez*, 878 F.3d 1268, 1274 (11th Cir. 2018) (plaintiffs, who alleged a U.S. citizen committed a brutal killing of a Chilean in Chile, "can allege only extraterritorial conduct, so they have no prospect of establishing jurisdiction [under the ATS]").

In this case, the allegations involve "[foreign] actors engaged in [foreign] murders against [a foreign] victim[] to further [foreign] interests." 2014 U.S. Dist. LEXIS 138887, at *16.  While the Plaintiff alleges U.S. interests are implicated, like in *Jaramillo v. Naranjo*, "those tangential interests are wholly insufficient to overcome the extra-territorial nature of the crimes alleged." *Id.*  Therefore, the "ATS claims must fail." *Id.*

      C.     *Claims based on secondary liability under the ATS should not be permitted and, in any event, Plaintiffs' secondary liability allegations do not sufficiently touch and concern the United States so as to displace the presumption against extraterritoriality, and they are not plausibly pled.*

As an initial matter, Messrs. Al-Qahtani and Al-Assiri submit that the binding precedent, *see e.g. Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 28-32 (D.C. Cir. 2011), in this Circuit that permits an ATS claim based on aiding and abetting liability should be overturned.[3]  If, however, the Court were to

---

[3] This issue is currently before the United States Supreme Court. *See Nestlé USA, Inc. v. Doe I*, Nos. 19-1416 and 19-453.  The Court heard oral argument on December 1, 2020 and is expected to issue an opinion by the conclusion of this Term.  Accordingly, Messrs. Al-Qahtani and Al-Assiri preserve this

allow an ATS claim to proceed on aiding and abetting liability, the Plaintiffs' claim fails because the purported domestic conduct does not "sufficiently 'touch[] and concern[]' the territory of the United States so as to displace the presumption against extraterritoriality." *Mastafa v. Chevron Corp.*, 770 F.3d 170, 186 (2d Cir. 2014); *see also Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 197 (5th Cir. 2017) (explaining that, where the "conduct that violates international law . . . 'occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory'") (quoting *RJR Nabisco*, 579 U.S. 325, 136 S. Ct. at 2101). As the Crown Prince explains, *see* Mot. to Dismiss, pp. 47-50 (which Messrs. Al-Qahtani and Al-Assiri adopt and incorporate by reference), the only relevant conduct alleged in the United States consisted of instructions and assurances that Mr. Khashoggi allegedly received at the Saudi Embassy in Washington, D.C., before he departed to Turkey, and these allegations are implausibly pled, and, as argued by the Crown Prince considering them would require the Court to declare invalid an official act of a foreign sovereign, which the Court cannot do.  Further, as described by the Crown Prince, these allegations fail because the Complaint does not allege that Embassy officials or the Ambassador knew of the purported plan to kill Mr. Khashoggi, as required for the conduct to have aided and abetted a violation of international law.  *See Id.*  Nor does the Complaint alleged that either Mr. Al-Qahtani or Mr. Al-Assiri knew of the alleged actions or any intent of the Embassy and Embassy officials, or that they knowingly provided assistance to them that had a substantial effect on the perpetration of the crime.

---

issue for review and reserve the right to file a supplemental memorandum of law in light of the Court's Opinion.

**V.    Plaintiff Cengiz is not the appropriate plaintiff under the TVPA; she has failed to state a claim; and secondary liability is not a cognizable claim under the TVPA.**

Messrs. Al-Qahtani and Al-Assiri adopt, and incorporate by reference, the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that Ms. Cengiz is not an appropriate plaintiff and fails to state a claim under the TVPA.  *See* Crown Prince Mot. to Dismiss, pp. 34-46

The Complaint does not allege that Mr. Al-Qahtani or Al-Assiri personally murdered Mr. Khashoggi.  Rather, the Plaintiffs claims against Messrs. Al-Qahtani and Al-Assiri rest entirely on secondary liability.  Should the Court find that Plaintiff Cengiz is an appropriate plaintiff and has exhausted remedies in Turkey, the TVPA claim should nevertheless be dismissed because secondary liability is not cognizable under the TVPA.  "The text of the TVPA is silent as to aiding and abetting, and such silence should not be interpreted as granting and authorizing that liability."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 618 (S.D.N.Y. 2012).  Because neither aiding and abetting nor conspiracy liability are found in the text of the TVPA, the Court should not infer such liability.[4]

"If… Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text.  But it did not."  *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)(declining to find aiding and abetting liability under section 10(b) of the Securities Exchange Act of 1934); *see also Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 277 (D.C. Cir. 2018)(finding, in the context of the pre-2016 version of the Anti-Terrorism Act, that "[t]he key takeaway from *Central Bank* is that when Congress creates a private cause of action,

---

[4] *See also* Defendant Bader Alasaker's Mot. to Dismiss Amended Compl. in *Saad Aljabri v. Mohammed Bin Salman Bin Abdulaziz Al Saud, et al.*, Case No. 1:20-cv-02146-TJK, ECF No. 94 at 31-32.  Portions of the argument above rely directly on this brief with permission of its authors.

aiding and abetting liability is not included in that cause of action unless Congress speaks to it explicitly.").[5]

Because the TVPA fails to mention aiding and abetting or conspiracy liability, *see* 28 U.S.C. § 1350, Congress has "unambiguously foreclosed" such liability. *Owens*, 879 F.3d at 279; *see also Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of N.Y., Inc.*, 889 F. Supp. 2d 912, 924 (S.D. Tex. 2012) ("Even if Defendants could be sued under the TVPA, Plaintiff's Complaint still fails to state a claim because that statute does not permit liability for aiding and abetting a primary violator.") (citing *Mastafa v. Chevron Corp.*, 759 F. Supp. 2d 297, 300 (S.D.N.Y. 2010); *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1027 (W.D. Wash. 2005) aff'd, 503 F.3d 974 (9th Cir. 2007).). Therefore, because the TVPA fails to mention secondary liability, the Plaintiffs' secondary liability allegations under the TVPA should be dismissed.

## VI.   If the Court were to find it has personal and subject matter jurisdiction, the Complaint's federal claims should be dismissed because they are based on conclusory allegations.

As explained *supra*, the Complaint's federal claims fail for lack of jurisdiction and for multiple other legal deficiencies. Should the Court nonetheless find that it has jurisdiction and that the federal claims have survived the legal deficiencies, the federal causes of action still fail to state a claim because they are based entirely on conclusory allegations. "[T]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory allegations [] will not suffice to state a claim." *Tolton v. Day*, Civil Action No. 19-945 (RDM), 2020 U.S. Dist. LEXIS 87793, at *105 (D.D.C. May 19, 2020)(internal

---

[5] The footnote in *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 58 n. 49 on the absence of vicarious liability in the TVPA is nonbinding *dicta* because in *Doe v. Exxon Mobil Corp.*, the court was determining whether corporations could be held liable as aiders and abettors, not whether secondary liability extends to natural persons. Indeed, the court only "assum[ed] arguendo that aiding and abetting liability is available to natural persons under the TVPA," in holding that corporations could not be liable as aiders and abettors. *Id.* at 58. Accordingly, the Court should follow the D.C. Circuit's holding in *Owens* and the Supreme Court's holding in *Central Bank*, rather than the *dicta* in *Doe v. Exxon Mobil Corp.* and conclude that the TVPA does not provide for aiding-and abetting or conspiracy liability.

quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   *See also Beanal v. Freeport-McMoran, In*c., 197 F.3d 161, 169 (5th Cir. 1999)("Because we find that Beanal fails to state with the requisite specificity and definiteness his claims of individual human rights violations under the ATS, we find that his allegations under the TVPA also suffer from the same pleading defects.  Beanal fails to provide sufficient underlying facts to support his claims."); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266-70 (11th Cir. 2009) (applying *Iqbal*'s pleading standard to claims brought under the Alien Tort Statute and Torture Victim Protection Act), *abrogated on other grounds* by *Mohamad v. Palestinian Authority*, 566 U.S. 449 (2012).

As noted above, the claims against Messrs. Al-Qahtani and Al-Assiri can proceed only to the extent that the Complaint adequately alleges facts that could plausibly support its legal theory against them, a theory that they are secondarily liable for the alleged conduct of others.  The Complaint, however, fails to do so.

A.  *The Complaint fails to allege the elements of a conspiracy claim against Mr. Al-Qahtani.*

To plead conspiracy liability, a plaintiff must allege with specificity: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983); *see also Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1159 (11th Cir. 2005) (applying *Halberstam* to Alien Tort Statute claim).

The Complaint asserts conspiracy liability for Messrs. Al-Qahtani and Al-Assiri, but fails to make even the most basic factual allegations that could, if true, plausibly establish their participation in a conspiracy.  The Complaint alleges that Mr. Al-Qahtani "acted as a co-conspirator" in the death of Mr. Khashoggi, Compl., ¶10.  Yet, the Complaint fails to allege any facts with respect to when and where Mr. Al-Qahtani entered into a conspiratorial agreement, with whom he agreed, or what it is

they agreed to do.  As discussed above, the facts alleged in the Complaint are gleaned from media reports, which themselves based on secondhand information.  The Court should not credit these allegations in assessing whether the Complaint states a claim.  *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (per curiam) (rejecting "a single conclusory statement from an anonymous source" in a newspaper article as insufficient to plead standing); *In re Investment Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 623 (S.D.N.Y. 2017) (rejecting as insufficient "vague" allegations premised on statements by "people familiar with" alleged events) ; *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007) (refusing to allow plaintiffs "to fill gaps in their factual allegations by reference to unnamed or anonymous sources in a newspaper article"); *see also Atkins v. Fischer*, 232 F.R.D. 116, 132 (D.D.C. 2005) ("[C]ourts within this Circuit have consistently barred newspaper articles from introduction as evidence due to the fact that they constitute inadmissible hearsay.").

But even if the Court considers allegations premised solely on news articles, often relying on anonymous sources, these allegations do not plausibly state a claim against Mr. Al-Qahtani.  Rather, they allege that Mr. Al-Qahtani, as a government official, was displeased with Mr. Khashoggi's reporting in one instance and pleased with it in another instance.  *See id.* ¶¶ 50, 57.  Likewise, it is alleged that Mr. Al-Qahtani called into the Consulate in Istanbul following the murder of Mr. Khashoggi.  But there is no allegation regarding to whom Mr. Al-Qahtani spoke.  There is no factual allegation of Mr. Al-Qahtani directing others, in particular other Defendants, to do anything to further any plot to murder Mr. Khashoggi or that he otherwise knowingly entered into an agreement to participate in carrying out such a plot.  Indeed, there is no factual allegation that he was aware of any effort to murder Mr. Khashoggi until after Mr. Khashoggi was killed.  *See Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010) ("Fatal then to the plaintiffs' conspiracy theory claim is the failure of their amended complaint to provide any indication of when or how such an agreement was brokered,

or how the . . . Defendants specifically, as opposed to all the named defendants generally, were parties to an agreement.").[6]

B.    *The Complaint fails to allege the elements of aiding and abetting against Mr. Al-Qahtani.*

To allege aiding and abetting liability under common law, the following elements must be alleged: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Halberstam v. Welch*, 705 F.2d at 477.   Under international law, as the Crown Prince explains, conduct constitutes aiding and abetting only if done with "knowledge that [it] w[ould] assist the perpetrator in the commission of the crime."   *See* Crown Prince Mot. to Dismiss, pp. 49-50, (citing *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 33-34 (D.C. Cir. 2011)(*Exxon II*), and discussing that the D.C. Circuit partially vacating *Exxon II* did not change the aiding and abetting standard).   The knowledge element, in turn, requires that the U.S.-based actor "actually knew" both (1) "the intent of the principal perpetrator" and (2) that its conduct would help the principal perpetrator commit the violation.   *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 108-09 (D.D.C. 2017) (Bates, J.), vacated in part on other grounds, 285 F. Supp. 3d 240 (D.D.C. 2018); *see also Doe v. Exxon Mobil Corp.*, 2015 WL 5042118, at *11 (D.D.C. July 6, 2015) (*Exxon III*) ("A defendant is only liable for aiding and abetting if they know that their acts assist the commission of the principal offense.").   Aiding and abetting under international law further requires showing "practical assistance, encouragement, or moral

---

[6] The Complaint contains no factual allegation that Mr. Al-Qahtani had knowledge of the existence or purpose of an alleged conspiracy to murder Mr. Khashoggi.   The Complaint, again citing a media report that should not be considered by the Court, claims that at some unidentified point in time in the hours after the killing and dismemberment of Mr. Khashoggi, Mr. Al-Qahtani supposedly said to unidentified co-defendants, "Bring me the head of the dog." *Id.* ¶¶ 130-31.   Even were the Court to consider this allegation, since it purports to be a statement made after the murder occurred, it could hardly constitute entering into an agreement to commit the murder.

support which has a substantial effect on the perpetration of the crime," such that the violation "probably would not have occurred absent [that] conduct." *Ofisi*, 278 F. Supp. 3d at 108-09.  It is only available "where assistance is provided to a criminal's human rights abuses, not simply to the criminal himself." *Id.* (citations omitted).

The Complaint's assertion of aiding and abetting – under either common law or international law is, like its assertion of conspiracy, purely conclusory.  The Complaint does not allege facts from which one could plausibly conclude that Mr. Al-Qahtani "actually knew" of "the intent of the principal perpetrator," much less that he provided any assistance "which ha[d] a substantial effect on the perpetration of the crime" such that the violation "probably would not have occurred absent [that] conduct." *Ofisi*, 278 F. Supp. at 108-09.  None of the allegations describe any assistance that Mr. Al-Qahtani allegedly provided, much less assistance that had such a substantial effect, the crime would not have occurred absent that conduct.

      C.   *The Complaint fails to allege any facts from which Mr. Al-Assiri could be found secondarily liable for the conduct of others.*

The Complaint is even more threadbare with respect to Mr. Al-Assiri.  Mr. Al-Assiri's name is mentioned in only one of the Complaint's 218 paragraphs.  In that paragraph, the Complaint bases its accusation that Mr. Al-Assiri "planned and organized" the team who allegedly carried out the killing on no more that "information and belief."  There are no factual allegations made to support this conclusion.  In fact, it is not even plausibly alleged that Mr. Al-Assiri knew who Mr. Khashoggi was, much less participated in a plot to kill him.  The scant conclusory allegation lacking any supporting factual allegations fails plausibly to state any claim of secondary liability against Mr. Al-Assiri.

**VII.**   **If the Court dismisses the ATS and TVPA claims, the Court lacks jurisdiction over Plaintiffs' non-federal claims.**

If the Court dismisses the ATS and TVPA claims, the Court should dismiss the Plaintiffs' non-federal claims for lack of pendent personal jurisdiction as the Court is divested of personal

jurisdiction over Messrs. Al-Qahtani and Al-Assiri.  Fed. R. Civ. P. 4(k)(2) is available only for a "claim

that arises under federal law."  *See supra* Part I.G.  Alternatively, the Court should decline to exercise

supplemental jurisdiction over the Plaintiffs' common-law claims.  *See* Crown Prince's Mot. to

Dismiss, p. 50 (adopted and incorporated by reference).

## VIII.   If the Court were to exercise jurisdiction over non-federal claims, they should be dismissed because each fails as a matter of law.

Messrs. Al-Qahtani and Al-Assiri adopt, and incorporate by reference, the legal standard and

arguments in the Crown Prince's Motion to Dismiss that Plaintiffs fail to state any non-federal claims.

*See* Crown Prince Mot. to Dismiss, pp. 50-60.

As an initial matter, each of the Complaint's five non-federal claims is premised on the same

conclusory allegations of conspiracy and aiding and abetting.  Like the federal claims, these causes of

action fail to state a plausible claim, to the extent those claims are even cognizable under any state

laws.  As discussed *supra*, Part VI, the Complaint is void of any factual allegations that Messrs. Al-

Qahtani and Al-Assiri formed an agreement with anyone, much less that there was an agreement to

violate the law and an perform an overt act in furtherance of a common scheme.  Nor does the

Complaint allege any facts upon which one could plausibly conclude that Messrs. Al-Qahtani and Al-

Assiri had knowledge of, or provided any assistance with the intent to further, a principle's unlawful

act for each of these claims.  *See, e.g., Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001); *District of

Columbia v. Precision Contracting Sols., LP*, No. 2019 CA 005047 B, 2020 D.C. Super. LEXIS 31, *22

(conspiracy elements); and *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, 246 F. Supp. 3d 52,

87-88 (D.D.C. 2017) (aiding and abetting elements).

### A.      *The Complaint's Tortious Interference of Contract claim fails as a matter of law.*

Messrs. Al-Qahtani and Al-Assiri adopt, and incorporate by reference, the legal standard and

arguments set forth in the Crown Prince's Motion to Dismiss that DAWN fails to state a claim for

tortious interference with contract.  *See* Crown Prince Mot. to Dismiss, pp. 51-55.

As with the Crown Prince, the Complaint fails to allege any facts upon which to conclude that Messrs. Al-Qahtani and Al-Assiri had personal knowledge of the Mr. Khashoggi's contract, as required to hold them liable for tortious interference.  *See id.* (explaining that the Complaint's sole reference to this supposed knowledge is a conclusion: "Defendant Mohammed bin Salman, other Defendants, and their co-conspirators discovered Mr. Khashoggi's plans to utilize DAWN as a platform to espouse democratic reform and promote human rights") (citing Compl. ¶ 3).  As the Crown Prince explains, the assertion that "Defendants" learned of Mr. Khashoggi's activities through an unnamed "operator" who hacked another individual's phone is an "unreasonable inference."  *See id.* (citing *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021)).

In any event, alleging that Messrs. Al-Qahtani and Al-Assiri purportedly conspired with others fails to establish *their* knowledge of a contract.  *See id* (citing *Nyambael v. AlliedBarton Sec. Servs.*, LLC, 153 F. Supp. 3d 309, 316 (D.D.C. 2016) (explaining that a plaintiff "cannot rely on [a] civil conspiracy theory to impute knowledge of [its] business relationships from [one conspirator] to [another] to state a tortious interference claim")).

Without any factual allegations that Messrs. Al-Qahtani and Al-Assiri even knew of DAWN's existence, it certainly cannot plausibly be pled that they possessed a 'strong showing of intent to disrupt'" DAWN's alleged contract with Mr. Khashoggi.  *See* Crown Prince Mot. to Dismiss, pp. 54-55 (citing *Nanko Shipping, USA v. Alcoa, Inc.*, 107 F. Supp. 3d 174, 182-83 (D.D.C. 2015) (quoting *Bell v. Ivory*, 966 F. Supp. 23, 31 (D.D.C. 1997), aff'd, 1998 WL 388499 (D.C. Cir. May 13, 1998) (per curiam) (judgment noted at 159 F.3d 635 (table)), *rev'd on other grounds and remanded*, 850 F.3d 461 (D.C. Cir. 2017).

B.      *The Complaint's wrongful death claim fails as a matter of law.*

Messrs. Al-Qahtani and Al-Assiri adopt, and incorporate by reference, the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that Plaintiff Cengiz's wrongful death claim fails.  *See* Crown Prince Mot. to Dismiss, pp. 55-56.

C.      *The Complaint's intentional infliction of emotional distress claim fails as a matter of law.*

Messrs. Al-Qahtani and Al-Assiri adopt, and incorporate by reference, the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that Plaintiff Cengiz's claim for intentional infliction of emotional distress fails.  *See* Crown Prince Mot. to Dismiss, pp. 56-59.

D.      *The Complaint's loss of consortium fails as a matter of law.*

Messrs. Al-Qahtani and Al-Assiri adopt, and incorporate by reference, the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that Plaintiff Cengiz's loss of consortium claim fails.  *See* Crown Prince Mot. to Dismiss, pp. 56-60.

E.      *The Complaint's seventh claim, loss of society, fails as a matter of law.*

Messrs. Al-Qahtani and Al-Assiri adopt, and incorporate by reference, the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that Plaintiff Cengiz's loss of society claim fails.  *See* Crown Prince Mot. to Dismiss, pp. 56-60.

## CONCLUSION

The Complaint's vivid descriptions of Mr. Khashoggi's final moments, while tragic, cannot overcome its legal deficiencies.  The Complaint seeks to hale two foreign nationals living abroad into a United States court to defend a suit based on allegations that they engaged in entirely foreign conduct, conduct that is alleged to be tortious based on largely on media reports that rely on unnamed sources.  This Court should not allow this suit to proceed against Messrs. Al-Qahtani and Al-Assiri. This Court has no personal jurisdiction over them.  In addition, the Act of State Doctrine bars the Plaintiffs' claims and Saudi Arabia is an indispensable party that cannot be joined because it is immune

from suit.  Further, Plaintiff Cengiz fails to establish jurisdiction or state a cause of action under the

Alien Tort Statute and she is not the appropriate plaintiff under the TVPA and has failed to state a

TVPA  claim.  The Complaint's federal claims should be dismissed because they are based on

conclusory allegations and, as a result, the Court should also dismiss the non-federal claims.  Each the

claims asserted in the Complaint against Messrs. Al-Qahtani and Al-Assiri fails as a matter of law.  The

Complaint against Messrs. Al-Qahtani and Al-Assiri  should be dismissed.


Date:  June 4, 2021                                      Respectfully Submitted,


                                   _____/s/_____
                                   Barry J. Pollack (DC Bar #434513)
                                   Law Offices of Barry J. Pollack, LLC
                                   1629 K Street, N.W., Suite 300
                                   Washington, DC 20006
                                   202-230-9647
                                   barryjpollack@gmail.com

                                   _____/s/_____
                                   Jessica N. Carmichael (DC Bar #998952)
                                   Carmichael Ellis & Brock, PLLC
                                   108 N. Alfred Street, 1st FL
                                   Alexandria, Virginia 22314
                                   (703) 684-7908
                                   jessica@carmichaellegal.com

                                   *Attorneys for Saad Al-Qahtani and Ahmed Al-Assiri*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2021 I caused a true and correct copy of the foregoing

Motion of Saud Al-Qahtani and Ahmed Al-Assiri to Dismiss the Complaint Against Them to be

served through the Court's CM/ECF System to all counsel of record.

/s/ _____
Jessica N. Carmichael