# Exhibit A

# COMPENSATION FOR SERVICE AGREEMENT

This Agreement ("Agreement") is made on and effective as of June 1, 2018 between Democracy for the Arab World, Inc. (DAWN), a Delaware non-profit corporation (the "DAWN"), and Jamal Khashoggi ("Executive").

DAWN and Executive are hereby referred to herein as a "Party" and together, the "Parties".

**WHEREAS**, DAWN is in the business of research and advocacy;

**WHEREAS**, Executive has skills and experience useful in the business of DAWN; and

**WHEREAS,** the Parties wish to enter into this Agreement in order to provide for the compensation of Executive by DAWN.

**NOW THEREFORE,** it is hereby agreed by the Parties as follows:

**1 Engagement by DAWN.**

**1.1** <u>Engagement</u>.  DAWN shall engage Executive, and Executive shall devote his full time, attention, knowledge and skills, faithfully and diligently in the performance of his duties under this Agreement and shall use his best efforts to enhance and promote DAWN's business in accordance with the terms and conditions of this Agreement.  The term of the agreement shall be one (1) year and shall renew automatically thereafter for one-year terms subject to fundraising targets with Executive's guidance. Executive shall serve as DAWN's Executive Director and shall (i) plan and execute staffing, fundraising and strategic direction; and (ii) perform any other duties as may be assigned to him from time to time by the Board of DAWN. Executive shall start work on June 1, 2018.

**1.2** <u>Reporting and Decisions</u>. Executive's decisions shall be subject to oversight and approval of the Board of DAWN pursuant to the bylaws.

**1.3** <u>Office and Travel</u>.  Executive shall travel to the extent necessary in order to advance the business of DAWN. DAWN shall reimburse Executive for flights and reasonable accommodations to fulfill his duties and responsibilities under this Agreement, after presentation of proper receipts.

**2 Compensation and Benefits.**

**2.1** <u>Compensation</u>.  Executive shall be entitled to a gross salary of $120,000 (one-hundred twenty thousand US dollars) to be paid bi-weekly. This salary shall be independent of any other benefits as defined below.

**2.2** <u>Benefits.</u>  Executive shall be entitled to any health or leave benefits offered to other officers as outlined in the Employee. Handbook.

**2.3** <u>Taxes</u>. Any and all taxes applicable to Executive's compensation, other than those which are payable by DAWN under law, and any and all payments, reimbursements, and other disbursements payable to Executive in respect of this Agreement and/or DAWN, whether actual or contingent or otherwise, shall be Executive's sole responsibility.

**3** <u>Work for Hire</u>.

**3.1** Any intellectual property that Executive has created and shall create while serving under this Agreement by DAWN shall be considered a "work made for hire" as defined by the copyright, trademark and patent laws of the United States.  DAWN shall be the sole and exclusive owner and copyright proprietor of all rights and title in and to the results and proceeds of Executive's services hereunder, of whatever kind, in whatever stage of completion.  If for any reason any results or proceeds of Executive's services hereunder are determined at any time not to be a "work made for hire", Executive hereby irrevocably transfers and assigns to DAWN, and agrees to transfer and assign to DAWN, all right, title and interest therein, including all trademarks, patents, copyrights and other property, knowhow, inventions, innovations, products and processes, as well as all renewals and extensions therein.

**3.2** Executive agrees that DAWN may make any changes or additions to Executive's work product that DAWN in its sole discretion

may consider necessary, convenient or appropriate and may engage others to do any or all of the foregoing, with or without attribution to Executive. Executive hereby waives, and agrees to waive, any so-called "moral" rights in any such work. Executive hereby represents and warrants that he has not violated any intellectual property or other right of any person with respect to his work for DAWN and that none of his work for DAWN has been libelous or obscene, and that he has not knowingly violated the right of privacy or publicity, or any other rights, of any person, firm or entity.

**3.3** This sub-section "Work for Hire" shall survive the termination of this Agreement.

**4 Termination for Cause.** DAWN shall have the right to terminate this Agreement for Cause, effective immediately upon providing written notice to Executive. For purposes of this provision, "Cause" shall mean a material breach of this Agreement and/or material failure to perform Executive's services, including but not limited to the commission of a criminal offense by Executive with respect to which Executive was indicted, found guilty, or pled *nolo contendere*; or a wilful act, statement or omission that injures DAWN, its business or affiliates.

**5 Restrictive Covenants.**

**5.1** Confidentiality. Executive agrees to maintain in confidence all confidential and proprietary information with regard to the business and operations of DAWN including, without limitation, donors, business plans, operations, finances and other proprietary information concerning DAWN's business, and the existence and terms of this Agreement, and shall take all reasonable steps to prevent such information from becoming known to anyone other than those Executives, Officers and agents of DAWN who need the information in the scope of their duties.

**5.2** Non-Competition. Executive acknowledges that, in the course of his service with DAWN, Executive will become familiar with DAWN's trade secrets, donors, plans and with other confidential information concerning DAWN and that Executive's services have been and will be of special, unique and extraordinary value to DAWN. Therefore, Executive agrees that, during his service, and for a period of six (6) months thereafter (together, the "Non-

Compete Period"), Executive shall not, directly or indirectly own, manage, control, participate in, consult with, render services for, or in any manner engage in any business competing with the business of DAWN as such business exists or shall exist during the Non-compete Period anywhere in the United States. During the Term of this Agreement, Executive shall refer to DAWN all business opportunities that are related to research, advocacy or any opportunity related to the business of DAWN.

5.3 <u>Non-Solicitation</u>. During the Non-Compete Period, Executive shall not, directly or indirectly, and shall not assist anyone else to, directly or indirectly (i) hire any Executive, officer, agent, independent contractor, business partner or service provider of DAWN ("Affiliated Parties") (ii) induce or attempt to induce or persuade any Affiliated Parties to leave their employment, consulting service, partnership, donation, or association with DAWN, or in any way interfere with the relationship between DAWN and any Affiliated Parties, or (iii) induce or attempt to induce any donor, stakeholder, or other Affiliated Parties to cease doing business with DAWN, or refrain from entrusting additional business to, or doing additional business with DAWN, or in any other way interfere with the relationship between any Affiliated Parties and DAWN.

5.4 <u>Non-Circumvention</u>. While employed by DAWN, Executive shall adhere to the fiduciary duty expected of the position and shall not engage in any activity which usurps any DAWN opportunity in favor of a personal gain for Executive.

5.5 <u>Non-Disparagement</u>. Each Party undertakes to refrain from directly or indirectly, in any manner, disparaging, deprecating, defaming, discrediting, or belittling the other Party (and shall not encourage or assist any person to do the same), its affiliates and/or business, activities, operations, skills, reputation, products, services, officers, Members, Executives, agents or donors.

5.6 <u>Reasonableness</u>.  If a court shall hold that the duration, scope or area restrictions stated herein are unreasonable under circumstances then existing, the Parties agree that the maximum duration, scope or area reasonable under such circumstances shall be substituted for the stated duration, scope or area and that the court shall be allowed and requested to revise the restrictions contained herein to cover the maximum period, scope and area

permitted by law.

**5.7** <u>Irreparable Harm; Remedies</u>. Executive acknowledges that breach by him of any provision of this Section would result in irreparable harm to DAWN for which money damages would be an insufficient remedy, and therefore that in the event of the breach or a threatened breach by Executive of any of the provisions of this Section, DAWN, in addition and supplementary to other rights and remedies existing in its favor at law or in equity, may apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive or other relief.

**6 Representations and Warranties.** Executive hereby represents and warrants that:

**6.1** He has full capacity to enter into this Agreement and to perform his obligations hereunder and is not disabled in any manner from carrying out his responsibilities hereunder.

**6.2** Executive represents that there are no binding non-compete contracts or agreements, written or oral, with any of his previous employers that would prevent or limit him in any way from performing any of his duties hereunder. Executive agrees to hold DAWN harmless from any liability for any grievance of a previous employer and assumes sole personal responsibility for any claim made against DAWN by a previous employer relating to his service with DAWN.

**7 Controlling Law and Dispute Resolution**. This Agreement and the rights of the Parties hereunder shall be governed by, interpreted, and enforced in accordance with the laws of the District of Columbia. Upon the occurrence of a dispute between the Parties arising under or with respect to the service and the terms of this Agreement, such dispute shall be submitted to arbitration. The arbitration award shall be final and binding upon the Parties and enforceable in any court of competent jurisdiction.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written.

**DEMOCRACY FOR THE ARAB WORLD, INC.     JAMAL KHASHOGGI**

By: _____
_____

Name:   Jamal A. Khashoggi     Date:   05.31.2018

Title:

Date:

2