IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HATICE CENGIZ, *et al.*, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-03009 |
| ) | |
| MOHAMMED BIN SALMAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPLY TO PLAINTIFF'S OPPOSITION TO SAUD AL-QAHTANI AND
AHMED AL-ASSIRI'S MOTION TO DISMISS THE COMPLAINT AGAINST THEM**

Plaintiffs' Response in Opposition to Saud Al-Qahtani and Ahmed Al-Assiri's Motion to Dismiss the Claim fails to point to factual allegations in the Complaint that, if true, would plausibly state a claim, because the Complaint lacks the requisite factual allegations. Instead, the Response relies on the attenuated connections and unsupported conclusions alleged in the Complaint that illustrate why the Complaint is insufficient. These flaws are apparent in the Plaintiff's effort to manufacture personal jurisdiction in the United States over Messrs. Al-Qahtani and Al-Assiri. For example, the Plaintiffs' Response states, "[Jamal Khashoggi's] work was painful to Defendants, particularly MBS, because it threatened Defendants' economic and political interests in the United States." Resp. at 2 (citing Compl. ¶ 42). Yet, the Complaint fails to allege any factual basis to conclude that Messrs. Al-Qahtani and Al-Assiri have *any* economic or political interests in the United States, much less that Mr. Khashoggi affected such interests. The Plaintiffs' strained effort to tie Mr. Khashoggi's death to the United States focuses primarily on the discussions of Mr. Khashoggi's marriage certificate and the purported contacts he had with the Saudi Embassy in the United States. *See* Resp. at 3, 6-18. Yet, there are no allegations, not even conclusory allegations, that Messrs. Al-Qahtani and Al-Assiri had any involvement with the United States Embassy or Mr. Khashoggi's quest for the marriage certificate.

Because Plaintiffs have failed to establish personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri, and for all of the reasons stated in their motion the Complaint against them should be dismissed.

## ARGUMENT

**I.      The Court lacks personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri.[1]**

Plaintiffs argue that "[t]he Court has jurisdiction over [Messrs. Al-Qahtani and Al-Assiri] for the same reasons that it has jurisdiction over [the Crown Prince]." Resp. at 25. First, the Plaintiffs argue, "the Court has jurisdiction over both defendants because they targeted the United States." Resp. at 25. Yet there is simply nothing alleged in the Complaint to suggest that Messrs. Al-Qahtani and Al-Assiri had any objective that involved the United States. The Plaintiffs' argument that targeting Mr. Khashoggi (which Messrs. Al-Qahtani and Al-Assiri did not do) should be equated with targeting the United States fails for the reasons stated in the Crown Prince's Reply at §I(C) (adopted and incorporated by reference).

However, even if *the Crown Prince* had any such objective in the United States related to Mr. Khashoggi, the Complaint fails to allege that Messrs. Al-Qahtani and Al-Assiri shared that aim. Characterizing Mr. Al-Qahtani as the Crown Prince's "trusted advisor" and "enforcer," (Resp. at 25), arguing that Mr. Al-Assiri worked at the behest of the Crown Prince (*id.*), and even arguing that both participated in the planning and/or carrying out of Mr. Khashoggi's murder in Turkey (*id.*), even if true, would not translate into either of these defendants possessing an aim to target the United States. Even being "aware" of this supposed personal motive of the Crown Prince for the murder to have an effect in the United States would not derivatively establish personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri who purportedly were tasked in Saudi Arabia with targeting Mr. Khashoggi in

---

[1] Messrs. Al-Qahtani and Al-Assiri adopt and incorporate by reference the entirety of the arguments in the Crown Prince's Reply Brief that the Court lacks personal jurisdiction. *See* Crown Prince Reply Br. at §I.

Turkey. "Awareness" of another's forum contacts does not suffice for personal jurisdiction. *See Atchley v. AstraZeneca UK Ltd.*, 474 F. Supp. 3d 194, 204 (D.D.C. 2020) ("even if [the foreign defendants] were somehow aware of JAM's upcoming attacks or planned attacks on U.S. citizens in Iraq, their contacts with the United States would remain far too attenuated to establish personal jurisdiction in American courts.")(internal quotations and citations omitted); *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 93 (2d Cir. 2008)("[Plaintiff's] burden is not satisfied by the allegation that the Four Princes intended to fund al Qaeda through their donations to Muslim charities. Even assuming that the Four Princes were aware of Osama bin Laden's public announcements of jihad against the United States and al Qaeda's attacks on the African embassies and U.S.S. Cole, their contacts with the United States would remain far too attenuated to establish personal jurisdiction in American courts.").

The Plaintiffs further contend that Mr. Al-Qahtani himself (not Mr. Al-Assiri) has contacts with the United States related to this litigation. Specifically, the Plaintiffs claim: after Mr. Khashoggi criticized President Donald Trump, *in 2016*, Mr. Al-Qahtani "told him that he was 'not allowed to tweet, not allowed to write, not allowed to talk,'" Resp. at 25 (citing Compl. ¶ 50)(emphasis added); *in 2017*, Mr. Al-Qahtani contacted Mr. Khashoggi and advised him that the Crown Prince was "closely monitoring his writings," *id.* (citing Compl. ¶57)(emphasis added); and *in 2017 or early 2018*, Mr. Al-Qahtani supposedly tried to "lure" Mr. Khashoggi back to Saudi Arabia while Mr. Khashoggi was in the United States by offering him a job. *Id.* at 26. (citing Compl. ¶81).

As an initial matter, all of three of these purported actions are supposed contact with Mr. Khashoggi, not the United States. Whether Mr. Khashoggi happened to be in the United States at that time (which is alleged to be only for one phone call), would be a fortuitous contact of the Plaintiff, and not purposeful availment of the defendant. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (plaintiff cannot "satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

3

286, 295 (1980) (Without evidence that the defendants tried to serve the forum market, the one isolated, fortuitous incident of a vehicle passing through the forum did not constitute purposeful availment of the forum.).

Second, these alleged contacts are not suit-related. The Plaintiffs claim "Al- Qahtani silenced Khashoggi's speech, informed him that MBS was monitoring him, and attempted to lure him out of the United States," and Mr. Khashoggi's murder "involved luring him out of the United States in order to silence his speech." Resp. at 26. Hence, the Plaintiffs argue, "there is a close relationship between Al-Qahtani's communications with the United States and the tort." *Id.* The Plaintiffs' argument is unpersuasive. Alleging that Mr. Al-Qahtani expressed displeasure with Mr. Khashoggi's writing in 2016 and 2017 and offered him a job in Saudi Arabia in late 2017 or early 2018 hardly amounts to suit-related contacts for a plot to murder Mr. Khashoggi in late 2018.

Finally, the Plaintiffs' broad brush argument that both Messrs. Al-Qahtani and Al-Assiri participated in purported "luring" of Mr. Khashoggi "out of the United States" to the Turkish consulate as part of the plot to murder him, *see* Resp. at 25, is likewise flawed. Indeed, the Plaintiffs concede that the allegation is based solely on speculation. *See* Resp. at 25 ("Given that MBS orchestrated the murder by luring Khashoggi out of the United States, and Al-Qahtani and Al-Assiri played central roles in the murder, *it is reasonable to infer* that Al-Qahtani and Al-Assiri participated in luring Khashoggi out of the United States.")(emphasis added). Such an argument, untethered to any specific allegation in the Complaint, is wholly inadequate. *See Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004)("While all inferences are to be drawn in favor of plaintiffs on a motion to dismiss, the Court will not draw inferences from such vague, unsupported allegations."). Additionally, as the Crown Prince notes, "Rule 4(k)(2) does not authorize jurisdiction based on a foreign defendant's alleged conspiracy with individuals acting in the United States." *See* Crown Prince Reply Br. at 1 (citing Crown Prince Mot. to Dismiss at 11).

4

The Plaintiffs also cannot show that asserting personal jurisdiction over Messrs. Al-Qahtani and Al-Assiri would be consistent with fair play and substantial justice. The Plaintiffs assert that the Crown Prince "is a sophisticated litigant with nearly unlimited resources" and "is no stranger to the United States." Resp. at 23. As the Crown Prince explains, these assertions are not sufficient for the Court to conclude that asserting personal jurisdiction is consistent with fair play and substantial justice. *See* Crown Prince Reply Br. at §I(D). Even if these assertions were enough, however, with respect to the Crown Prince, the Plaintiffs make no such claims regarding Messrs. Al-Qahtani or Al-Assiri. In fact, the Plaintiffs do not address the notions of fair play and substantial justice with respect to Messrs. Al-Qahtani and Al-Assiri at all. As Messrs. Al-Qahtani and Al-Assiri explained in their motion to dismiss, they are citizens and residents of the Kingdom of Saudi Arabia with no ties to the United States. The burden on them would be severe if they were required to "submit its dispute to a foreign nation's judicial system." Mot. to Dismiss, ECF No. 22 at 12 (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

Additionally, Messrs. Al-Qahtani and Al-Assiri explained in their Motion to Dismiss that the forum the Plaintiffs selected – the United States – has far less interest in this litigation than other, more appropriate forums and the Plaintiffs have no special interest in seeking relief in the United States. *Id.* Indeed, the Plaintiffs only reinforce this point when arguing for Turkish law to apply, stating, "But Turkey has the greater interest in a murder orchestrated on Turkish soil." Resp. 46 (citing *Embassy of the Federal Republic of Nigeria v. Ugwuonye*, 901 F. Supp. 2d 136, 143 & n.12 (D.D.C. 2012).

Finally, as the Crown Prince explains, the Plaintiffs fail to show pendent personal jurisdiction over Plaintiffs' non-federal claims, *see* Crown Prince Reply Br. at §I(F)], and jurisdictional discovery should not be permitted. *See id.* at §I(E).

**II.    The Plaintiffs' claims are barred by the Act of State Doctrine and for failure to join a necessary and indispensable party.**

Messrs. Al-Qahtani and Al-Assiri adopt and incorporate by reference the legal standards and arguments set forth in the Crown Prince's Reply at §§III; IV that the Plaintiffs' claims are barred by the Act of State Doctrine and for failure to join a necessary and indispensable party.

**III.   The Plaintiffs' TVPA claim fails.**

    i.    *Cengiz is not the appropriate plaintiff.*

Messrs. Al-Qahtani and Al-Assiri adopt and incorporate by reference the legal standards and arguments set forth in the Crown Prince's Reply at §V that Cengiz is not the appropriate plaintiff and fails to state a claim under the TVPA.

    ii.    *The TVPA does not provide for aiding and abetting or conspiracy liability.*

Neither aiding and abetting nor conspiracy liability are available under the TVPA. *See* Def.'s Mot. to Dismiss, ECF No. 22 at 17-18. The Plaintiffs do not address *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 618 (S.D.N.Y. 2012,) which states that "The text of the TVPA is silent as to aiding and abetting, and such silence should not be interpreted as granting and authorizing that liability." Instead, the Plaintiffs rely on an earlier case from the same district, *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 CIV. 8386, 2002 WL 319887, at *15 (S.D.N.Y. Feb. 28, 2002). *Wiwa* is unpersuasive. It rested its finding that there is aiding and abetting liability under the TVPA largely on the legislative history of the TVPA, specifically the Senate Judiciary Committee Report, S. Rep. No. 102-249. Congress, however, adopted the House bill, and the House Report fails to mention aiding or abetting liability. *See* H.R. Rep. No. 102-367, pt. 1, at 30 (1991). The Plaintiffs' reliance on the Senate Judiciary

Committee Report, Resp. at 55-56, is, like the decision in *Wiwa*, therefore far less persuasive than the reasoning in the subsequent Southern District of New York case *Sikhs for Justice*.[2]

Nor can the Plaintiffs rely on the analysis of aiding and abetting under international law discussed in *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 29 (D.C. Cir. 2011). The question of whether aiding or abetting is a violation of international law is irrelevant to interpreting the TVPA. The TVPA is not derived from international law. This Court should adhere to the principles in *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 279 n.12 (D.C. Cir. 2018) and *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*. If "Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text." 511 U.S. 164, 177 (1994).

Finally, the Plaintiffs do not address the issue of conspiracy liability under the TVPA, or contend with the D.C. Circuit's holding in *Owens* that "civil conspiracy" is unavailable in "the absence of an explicit congressional statement addressing it." 897 F.3d at 279 n.12. The TVPA does not mention conspiracy, and the Plaintiffs do not argue that the legislative history discusses it. Accordingly, there is no conspiracy under the TVPA.

iii.     *The Plaintiffs fail to state a plausible claim.*

Even if aiding and abetting and conspiracy liability were available under the TVPA, the Complaint fails adequately to allege that Messrs. Al-Qahtani and Al-Assiri aided and abetted and conspired to commit a violation of the TVPA.

---

[2] Further, the cases cited in the Senate Report do not discuss aiding and abetting liability, but rather liability for those who ordered killings or torture. *See* S. Rep. No. 102-249 (1992) (*citing Forti v. Suarez-Mason*, 672 F. Supp. 1531, 1537 (N.D. Cal. 1987); *In re Yamashita*, 327 U.S. 1 (1946)). Similarly, the Supreme Court and District of D.C. cases Plaintiffs cite -- *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458 (2012) and *Gonzalez-Vera v. Kissinger*, No. 02–02240, 2004 WL 5584378, at *8-9 (D.D.C. Sept. 17, 2004) -- both speak to higher officials ordering or authorizing killing or torture.

### A. Mr. Al-Qahtani

To support this contention with respect to Mr. Al-Qahtani, the Plaintiffs assert that Al-Qahtani:

> "served as a trusted adviser to [the Crown Prince] and was considered his 'enforcer.'" Compl. ¶ 10. Al-Qahtani monitored Khashoggi's U.S. activities on MBS's behalf. Compl. ¶ 57. On September 28, 2018, the Saudi department directed by Al-Qahtani was informed of Khashoggi's appearance at the Saudi consulate in Istanbul. Compl. ¶ 102.

Resp. at 57. Yet these assertions do not allege knowledge of a plot to murder Mr. Khashoggi, an intent to assist in that plot, an agreement by Mr. Al-Qahtani to participate in such a plot, or that Mr. Al-Qahtani substantially assisted in this alleged murder plot. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (elements of aiding and abetting under common law are: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation."; elements of conspiracy are: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme."). Nor does the Complaint allege facts that, if true, would plausibly establish that the murder of Mr. Khashoggi "probably would not have occurred absent [that] conduct." *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 108-09 (D.D.C. 2017) (Bates, J.)(Aiding and abetting under international law further requires showing "practical assistance, encouragement, or moral support which has a substantial effect on the perpetration of the crime," such that the violation "probably would not have occurred absent [that] conduct.").[3]

---

[3] The Response also reiterates the assertion (citing a media report that should not be considered by the Court) that at some unidentified point in time in the hours *after* the killing, Mr. Al-Qahtani

8

The Plaintiffs' Response then goes on to recite conclusory statements from other sources referenced in the Complaint, but for which the Complaint contains no supporting factual allegations. The Response states:

> The Department of the Treasury sanctioned Al-Qahtani because he "was part of the planning and execution of the operation that led to the killing of Mr. Khashoggi," and his subordinate "'coordinated and executed' the operation." Compl. ¶ 154. In addition, the recently declassified ODNI report states that the ODNI has "high confidence" that al-Qahtani "participated in, ordered, or [was] otherwise complicit in or responsible for the death of Jamal Khashoggi on behalf of Muhammad bin Salman." ODNI Report p. 3. Further, in the report, the ODNI states that its assessment of MBS's involvement is based on "the direct involvement of a key adviser." *Id.* at 2. That "key adviser" was al-Qahtani. The report explains that the Saudi team that arrived in Istanbul to murder Khashoggi "included officials who worked for, or were associated with," a Saudi entity led by "al-Qahtani, a close adviser of Muhammad bin Salman." *Id.* at 3. It explains that al-Qahtani "did not make decisions without the Crown Prince's approval."

Resp. at 58-59. These speculative and conclusory statements from secondary sources (relying on other unknown sources) remain just that –speculative and conclusory. The factual void is stark. For example, although the Plaintiffs say Mr. Al-Qahtani "was part of the planning and execution of the operation" Resp. at 58, the Plaintiffs cannot point to a single act that the Complaint alleges Mr. Al-Qahtani took to plan or execute this plot, let alone any knowledge that such acts would assist the commission of the murder. Although the Plaintiffs say "Al-Qahtani conspired with the murderers, as evidenced by him planning and executing the murder," Resp. at 58, the Plaintiffs have alleged any more than the conclusion that Mr. Al-Qahtani planned and executed this purported plot.

The Plaintiffs cite to no facts alleged in the Complaint regarding the nature of the assistance Mr. Al-Qahtani supposedly provided, how that aid constituted a substantial step toward the

---

supposedly said to unidentified co-defendants, "Bring me the head of the dog." Resp. at 57 (citing Comp. ¶131). As explained in Mr. Al-Qahtani's Motion to Dismiss, (at 21, n. 6) even were the Court to consider this allegation, since it purports to be a statement made after the murder occurred, it could hardly constitute an allegation that Mr. Al-Qahtani entered into an agreement to commit the murder, or substantially assisted in the commission of the murder. *See id.*

commission of the crime, or with whom or when Mr. Al-Qahtani allegedly formed an unlawful agreement. Nor could the Plaintiffs do so because the Complaint lacks any such factual allegations. The Plaintiffs' threadbare recitals of the elements fail to state a claim. *See Grider v. Cook*, 590 F. App'x 876, 881 (11th Cir. 2014) ("general conclusory allegations," which "never identified—even generally— a date, time, or location when the [defendants] allegedly communicated with those municipal entities or the nature of any alleged communications" were "threadbare recitals of the agreement element of conspiracy" and did not state a claim for conspiracy).

### B. Mr. Al-Assiri

With respect to Mr. Al-Assiri, the Plaintiffs contend:

> Al-Assiri was the "Deputy Director of the Saudi General Intelligence Presidency" who "planned and organized the team in Riyadh that ultimately traveled to Turkey to murder Jamal Khashoggi." Compl. ¶ 11. "On September 29, Defendant Muzaini . . . traveled to Riyadh where Defendant Assiri delivered his orders and mission plan for the murder." Compl. ¶ 104. As with Al-Qahtani, the ODNI report expresses "high confidence" that al-Assiri "participated in, ordered, or [was] otherwise complicit in or responsible for" Khashoggi's murder.

Resp. at 59 (citing ODNI Report pp. 3-4.13). These allegations are every bit as conclusory as those against Mr. Al-Qahtani – conclusions such as that he "planned and organized," relying on secondary sources for those conclusions. The Complaint is not saved by alleging a date and place in which Mr. Al-Assiri supposedly "delivered his orders and mission plan," *id.* While this answers, in conclusory fashion, where and when, it offers no factual allegations to support the conclusion that this is where and when Mr. Al-Assiri supposedly delivered his orders and mission plan, or, even by way of conclusion, what the orders and mission plan consisted of or how he delivered them. Absent factual allegations explaining when, where, who and how, these allegations, even with the conclusory assertion of where and when, are "threadbare recitals of the elements of a cause of action" which are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**IV.     Cengiz fail to state a claim under the Alien Tort Statute (ATS).**

Messrs. Al-Qahtani and Al-Assiri adopt and incorporate by reference the legal standards and arguments set forth in the Crown Prince's Reply §VI that Cengiz lacks standing under the ATS, and that her claim is impermissibly extraterritorial.[4] Cengiz's claim under the ATS is also implausibly pled for the reasons stated *supra* §III and in Messrs. Al-Qahtani and Al-Assiri's Motion to Dismiss, §VI.

**V.      The Plaintiffs fail to state any non-federal law claims.**

Messrs. Al-Qahtani and Al-Assiri adopt and incorporate by reference the legal standards and arguments set forth in the Crown Prince's Reply §VII that the Plaintiffs have failed to state a claim for: (1) tortious interference with contract; (2) wrongful death; (3) intentional infliction of emotional distress; (4) loss of consortium; and (5) loss of society, and should dismiss these state claims for lack of pendent personal jurisdiction, or alternatively should decline to exercise supplemental jurisdiction over them under 28 U.S.C. § 1367(c)(3). These claims are also implausibly pled for the reasons stated *supra* §III and in Messrs. Al-Qahtani's and Al-Assiri's Motion to Dismiss, §VIII.

With respect to the tortious interference claim specifically, Messrs. Al-Qahtani and Al-Assiri noted in their Motion to Dismiss that DAWN failed to plausibly allege that either of them knew of Mr. Khashoggi's contractual relationship with DAWN. *See* Mot. to Dismiss at 23-24. In response, DAWN argues that it "does not bear the burden of proving that each defendant was personally aware of the contract. Under the law of civil conspiracy, defendants can be liable for their co-conspirators'

---

[4] While Messrs. Al-Qahtani and Al-Assiri concede that binding precedent, *e.g.*, *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 28-32 (D.C. Cir. 2011), permits an ATS claim based on aiding and abetting liability, they believe this precedent is wrongly decided. *See* Br. for U.S. as Amicus Curiae Supporting Pet'rs at 23, *Nestlé USA, Inc. v. Doe I*, Nos. 19-1416 and 19-453 (U.S. Sept. 1, 2020) ("[u]nder *Jesner's* application of *Sosa's* second step, permitting aiding-and-abetting claims 'to proceed' would not represent 'a proper exercise of judicial discretion.'" (quoting *Jesner v. Arab Bank*, PLC, 138 S. Ct. 1386, 1399 (2018) (plurality op.)). The Supreme Court in *Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931 (2021), left this question open. Messrs. Al-Qahtani and Al-Assiri maintain their position and hereby preserve the issue for future review.

11

torts even if they did not personally commit all elements of the tort." Resp. at 67-68 (citing *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009)). As the Crown Prince explained in his Motion to Dismiss, however, "the Complaint fails adequately to allege that *any* Defendant knew of Khashoggi's contractual relationship with DAWN." Crown Prince Mot. to Dismiss, ECF No. 21 at 52 (emphasis added). Instead, the apparent alleged basis for knowledge is a hack of someone *else's* mobile phone by "an operator working on behalf of Defendants." *See* Compl. ¶74 ("Defendants [] learned of Mr. Khashoggi's activities with DAWN by hacking the phone of his friend and colleague Omar Abdulaziz"); ¶78("In [their WhatsApp] communications Mr. Khashoggi and Mr. Abdulaziz often discussed Mr. Khashoggi's use of his position with Plaintiff DAWN"); ¶79 ("In June of 2018, on information and belief, an operator working on behalf of Defendants infected Mr. Abdulaziz's cell phone with Pegasus spyware"); *see also* Al-Qahtani and Al-Assiri Mot. to Dismiss, ECF No. 22 at 23-24. More importantly, however, the Plaintiffs fail to explain why the personal knowledge of Messrs. Al-Qahtani and Al-Assiri need not be alleged. If neither knew of Mr. Khashoggi's contract with DAWN, or even of DAWN's existence, neither could have formed an unlawful agreement, or an intent, to interfere with it. Accordingly, the Complaint fails to allege and essential element for any finding of liability against Messrs. Al-Qahtani or Al-Assiri.

DAWN argues that, in any event, "the allegations in the complaint suffice to draw a reasonable inference that Messrs. Al-Qahtani and Al-Assiri were aware of Khashoggi's relationship with DAWN." Resp. at 68. It then reprises the same strained and conclusory allegations about Mr. Khashoggi's murder as it did for the TVPA claim. *See id.* Even if these allegations were sufficient to support a claim against Mr. Al-Qahtani and Al-Assiri for Mr. Khashoggi's death, these allegations do not translate into allegations of knowing of an ancillary plot to hack another person's phone that revealed the existence of the decedent's contract with DAWN.

## CONCLUSION

The Plaintiffs' strained efforts to tie Mr. Khashoggi's death to the United States are as conclusory and attenuated as their efforts to connect Messrs. Al-Qahtani and Al-Assiri to their claims. Messrs. Al-Qahtani and Al-Assiri are foreign nationals residing abroad, accused of participating in a murder plot of a foreign national abroad. The Court lacks personal jurisdiction over them. Additionally, the allegations in the Complaint against Messrs. Al-Qahtani and Al-Assiri are speculative and conclusory, and each is deficient for the reasons detailed above and in the Crown Prince's pleadings as well as Messrs. Al-Qahtani and Al-Assiri's Motion to Dismiss. The Plaintiffs have failed to state a claim, and the Complaint must be dismissed.


Date:   November 9, 2021                              Respectfully Submitted,


                                                      _____/s/_____
                                                      Barry J. Pollack (DC Bar #434513)
                                                      Law Offices of Barry J. Pollack, LLC
                                                      1629 K Street, N.W., Suite 300
                                                      Washington, DC 20006
                                                      202-230-9647
                                                      barryjpollack@gmail.com

                                                      _____/s/_____
                                                      Jessica N. Carmichael (DC Bar #998952)
                                                      Carmichael Ellis & Brock, PLLC
                                                      108 N. Alfred Street, 1st FL
                                                      Alexandria, Virginia 22314
                                                      (703) 684-7908
                                                      jessica@carmichaellegal.com

                                                      *Attorneys for Saad Al-Qahtani and Ahmed Al-Assiri*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of November, 2021 I caused a true and correct copy of the foregoing to be served through the Court's CM/ECF System to all counsel of record.

_____/s/_____
Jessica N. Carmichael