IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HATICE CENGIZ, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MOHAMMED BIN SALMAN, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:20-cv-03009 |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING PROCEEDINGS IN TURKEY

Defendants have submitted a Notice of Supplementary Authority to advise this Court that the Turkish courts have transferred the pending criminal case arising from the Khashoggi murder to Saudi Arabia. *See* Dkt. No. 46. But Defendants do not tell the full story. What actually occurred is this: In an effort to improve relations with Saudi Arabia, President of Turkey Recep Tayyip Erdoğan used his control over the Turkish judiciary to cause the prosecution to be transferred to Saudi Arabia. When a Turkish judge bravely dissented from this action, the judge was demoted in retaliation, causing him to seek early retirement in protest. In view of these events, it is not possible for Ms. Cengiz to receive a fair trial in the Turkish courts. Contrary to Defendants' suggestion, these events demonstrate beyond a shadow of a doubt that "adequate and available remedies" do not exist in Turkey. Therefore, this Court should hear Ms. Cengiz's claim under the Torture Victims Protection Act.

### BACKGROUND

On October 2, 2018, Jamal Khashoggi was tortured and murdered inside the Saudi Consulate in Istanbul, Turkey. Ms. Cengiz was Khashoggi's fiancée. In this suit, she alleges that

1

high-level Saudi officials, including Crown Prince Mohammed Bin Salman ("MBS"), are liable for Khashoggi's murder. She asserts several causes of action against those Saudi officials, including a claim under the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note).

Under Section 2(b) of the TVPA, a plaintiff must exhaust "adequate and available remedies in the place in which the conduct giving rise to the claim occurred." 28 U.S.C. § 1350 note § 2(b). At the time of the briefing on the motion to dismiss, a Turkish criminal prosecution against several Saudi nationals arising from Khashoggi's murder was pending. Ms. Cengiz argued at the time, among other things, that her Turkish remedy was inadequate because her civil case would be stayed pending the criminal case.

In 2022, there were a series of remarkable developments in the criminal case. To understand these events, it is necessary to provide some background information about the Turkish government and judicial system.

As explained in the expert declaration of Professor Güneş Murat Tezcür, attached as Exhibit A, Turkey does not have an American-style independent judiciary. President Recep Tayyip Erdoğan is an authoritarian leader who is in firm control of all branches of government, including the judiciary. Ex. A. ¶¶ 8–25. After an unsuccessful coup attempt in 2016, President Erdoğan's administration declared a state of emergency and increased its crackdown on dissenters. *Id.* ¶¶ 10–11. As part of his consolidation of power, President Erdoğan purged thousands of judges and installed judges loyal to him. *Id.* ¶ 17. President Erdoğan continues to control the judiciary by means of his control over the *Hâkimler ve Savcılar Kurulu* or "HSK" (in English, "Council of Judges and Prosecutors"). *Id.* ¶¶ 19–20. The HSK determines the appointment, promotion, and

demotion of judges and prosecutors.  *Id*. ¶ 20.  The President, via the HSK, punishes judges who make decisions in defiance of outcomes President Erdoğan wants.  *Id*.

The State Department has confirmed this understanding of the situation in Turkey.  In its 2021 Human Rights Report, the Department explained that while "[t]he law [in Turkey] provides for an independent judiciary, … the judiciary remained subject to influence, particularly from the executive branch. … The judiciary faced several problems that limited judicial independence, including intimidation and reassignment of judges[.]"[1]  The European Commission shares this view, expressing grave concern in its 2022 Progress Report over "the systemic lack of independence of the judiciary and undue pressure on judges and prosecutors."[2]  "The lack of objective, merit-based, standardised and pre-established criteria for recruiting and promoting judges and prosecutors remains a source of concern."[3]

There is no dispute that the judiciary is under President Erdoğan's control.  In fact, MBS's expert, Ozan Varol, has expressed similar views about President Erdoğan's regime.  He has explained: "The Supreme Council of Judges and Prosecutors was likewise transformed into a

---

[1] Bureau of Democracy, Human Rights, and Labor, *2021 Country Reports on Human Rights Practices: Turkey* 14, U.S. Dep't of State, https://www.state.gov/reports/2021-country-reports-on-human-rights-practices/turkey/ (last visited Oct. 12, 2022); Ex. A ¶ 24.

[2] Türkiye 2022 Report 5, European Commission (Oct. 12, 2022), available for download at https://neighbourhood-enlargement.ec.europa.eu/turkiye-report-2022_en (last visited Oct. 16, 2022); Ex. A ¶ 24.

[3] Türkiye 2022 Report at 6; Ex. A ¶ 24.  Non-governmental groups agree.  *See, e.g.*, Luca Perilli, *Judicial Independence & Access to Justice* 3, 35, Turkey Tribunal (Feb. 2021), https://tbinternet.ohchr.org/Treaties/CCPR/Shared%20Documents/TUR/INT_CCPR_ICS_TUR_44934_E.pdf (reporting that "Turkish courts have not been capable to effectively protect the fundamental rights of persons, leaving citizens under the arbitrary exercise of power by the Executive" and that "judicial independence has been demolished, since December 2013, by progressive interventions of the political majority driven by President Recep Tayyip Erdoğan, which have struck both external and internal judicial independence, fired and detained thousands of judges and prosecutors and then replaced them with political controlled ones."); Ex. A ¶ 24.

malleable body as evidenced by the Council's decision to fire or reassign hundreds of judges and prosecutors involved in the investigation of massive corruption related to Erdoğan and members of his party."[4] In the wake of the 2016 coup, President Erdoğan purged "2,777 judges and prosecutors (including two judges on the Turkish Constitutional Court)."[5] This "purge extend[ed] well beyond those who might have had connections to the coup plotters" and "a colossal witch hunt has been authorized against President Erdoğan's opponents" under the guise of responding to the coup.[6] President Erdoğan has turned the Turkish government into a "one-man system" under his control.[7]

President Erdoğan's control over the Turkish judiciary is vividly illustrated by his handling of the criminal proceedings arising from Khashoggi's murder. In the immediate aftermath of the murder, President Erdoğan took a strong stance against the crime and its perpetrators, and Saudi nationals were indicted by Turkish prosecutors. Ex. A ¶¶ 26–28. But Turkey recalibrated its foreign policy goals after Saudi Arabia imposed an informal embargo on Turkish imports and the economic crisis in Turkey deepened. *Id.* ¶¶ 29–30. Turkey therefore decided to make concerted efforts to attract Saudi investment in Turkey and boost Turkish exports to Saudi Arabia. *Id.* ¶ 30.

Transferring the Khashoggi case to Saudi Arabia was one of those efforts. *Id.* ¶ 31. After the Saudi government requested that Turkey's case against the murder suspects be transferred to Saudi Arabia, the Turkish prosecutor requested the transfer on March 31, 2022. *Id.*

---

[4] Ozan Varol, *Presidentialism in Turkey: Is it Already Here?*, ConstitutionNet (Nov. 24 2015), https://constitutionnet.org/news/presidentialism-turkey-it-already-here.

[5] Ozan Varol, *Turkey's Reichstag Fire*, https://ozanvarol.com/turkeys-reichstag-fire/ (last visited Oct. 17, 2022).

[6] *Id.*

[7] Ozan Varol, *Why Separation of Powers Doesn't Work*, https://ozanvarol.com/why-separation-of-powers-doesnt-work/ (last visited Oct. 17, 2022); Ex. A ¶ 23.

On April 7, 2022, a Turkish court agreed with this request, transferred the case to Saudi Arabia, and halted proceedings. *Id*. ¶ 32. Shortly thereafter, President Erdoğan paid a visit to Saudi Arabia—his first visit to Saudi Arabia after Khashoggi's murder. *Id*. ¶ 40. As the Washington Post explained, this transfer order was "widely seen as a concession by Turkish President Recep Tayyip Erdoğan to the Saudi government as the two countries try to mend their strained relations."[8]

A Turkish appellate court affirmed the transfer decision. Ex. A ¶ 33. Judge Nimet Demir, the chair of the Court, wrote an extraordinary dissent. *Id*. ¶ 33. He emphasized that the defendants were Saudi officials who acted on the orders of a high-ranking advisor to MBS, and Saudi Arabia's judicial system would never bring the defendants to justice. *Id*. ¶ 34. Thus, transferring the case would make the "suspects judges in their own trial." *Id*. Judge Demir conveyed that the decision to transfer the case to Saudi Arabia was a quid quo pro for the restoration of Saudi-Turkish cooperation: "a ransom payment to repair deteriorating bilateral relations." *Id*. ¶ 36. In Judge Demir's words, transferring the case is "incompatible with societal values of justice, equality, and truthfulness." *Id*. ¶ 37.

In response to his dissent, Judge Demir was involuntarily replaced and relocated to a "judicial backwater" in southeastern Turkey. *Id*. ¶ 38. As Judge Demir told the press, "I didn't ask for a relocation nor was I informed beforehand that I was going to be placed somewhere else. … I was trying to uphold democracy, human rights and freedoms." *Id*. Judge Demir decided to ask for early retirement as a result. *Id*.

---

[8] Kareem Fahim & Zeynep Karatas, *Turkish Court Transfers Khashoggi Murder Case to Saudi Arabia*, Wash. Post (Apr. 7, 2022), https://www.washingtonpost.com/world/2022/04/07/khashoggi-turkey-erdogan-mbs/.

The Khashoggi case in Turkey was formally dismissed on June 17, 2022 by the 11th Istanbul Heavy Penal Court. *Id*. ¶ 39. Days after this ruling, MBS visited Turkey and had a meeting with President Erdoğan. *Id*. ¶ 40. President Erdoğan and MBS issued a joint statement characterizing bilateral relations as "perfect" and announced the start of a "new era of cooperation" in political, economic, military, security, and cultural affairs. *Id*.

The Istanbul Regional Court of Justice upheld the dismissal of all charges against the Saudi defendants on September 8, 2022, denying a request by Ms. Cengiz to reinstate the judicial process. *Id*. ¶¶ 41–42.

## ARGUMENT

The TVPA requires exhaustion only if the foreign remedies are "adequate and available." The extraordinary recent events described above show beyond doubt that "adequate and available remedies" do not exist in Turkey.[9]

Exhaustion is an affirmative defense on which the defendant bears the burden of proof. *See Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230, 243 (D.D.C. 2005). "This burden of proof is substantial." *Jean v. Dorelien*, 431 F.3d 776, 781 (11th Cir. 2005). Defendants therefore cannot obtain dismissal on non-exhaustion grounds unless they adduce

---

[9] Plaintiffs adhere to their arguments at the motion to dismiss stage that Turkish remedies are inadequate because the Turkish legal system is slow, punitive damages would be unavailable, and there is no realistic avenue to executing a judgment. *See* Declaration of Orcun Cetinkaya, Dkt. No. 27-4 ¶¶ 36–46.

Mr. Cetinkaya, Plaintiffs' expert declarant regarding Turkish law at the motion to dismiss stage, has passed away. If the Court seeks additional evidence or testimony from a Turkish legal expert, Plaintiffs will put forth a new expert.

evidence demonstrating that remedies in Turkey are "adequate and available" to Ms. Cengiz. *See Collett*, 362 F. Supp. 2d at 242-43. They have not done so.[10]

Remedies are not "adequate and available" if attempting to obtain recovery would be "futile." *See, e.g.*, *Jean*, 431 F.3d at 781–82 (quoting S. Rep. No. 102–249, at 10); *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 & n.5 (9th Cir. 1996); *Doe v. Rafael Saravia*, 348 F. Supp. 2d 1112, 1151 (E.D. Cal. 2004); *Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1197 n.6 (S.D.N.Y. 1996). Thus, "[c]ourts have routinely found that … allegations that a country's judicial system is corrupt or ineffective are sufficient to show that a plaintiff lacks effective domestic legal remedies." *Boniface v. Viliena*, 338 F. Supp. 3d 50, 66 (D. Mass. 2018). In particular, courts hold that foreign remedies are not "adequate and available" when political control over the judiciary would prevent the plaintiff from receiving a fair trial. *See, e.g.*, *id.* (rejecting exhaustion defense at motion to dismiss stage based on allegation that defendant "exerted his political influence in Haiti to avoid accountability for his actions before fleeing to Massachusetts to escape prosecution"); *Doe v. Qi*, 349 F. Supp. 2d 1258, 1319 (N.D. Cal. 2004) (rejecting exhaustion defense at motion to dismiss stage in view of plaintiffs' allegations regarding "the control exerted over the Chinese judiciary by its executive authorities"); *Chiminya Tachiona v. Mugabe*, 216 F. Supp. 2d 262, 275 (S.D.N.Y. 2002) ("[T]he plaintiffs have fulfilled the exhaustion requirement of the TVPA by demonstrating that the Zimbabwean judicial system is sufficiently under the control of President Mugabe … so as to render it inaccessible to the plaintiffs."); *see also Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d

---

[10] Regardless, it is improper to adjudicate this issue in Defendants' favor at the motion to dismiss stage. As an affirmative defense, failure to exhaust may be resolved on a motion to dismiss only "if the complaint somehow reveals the exhaustion defense on its face." *Thompson v. DEA*, 492 F.3d 428, 438 (D.C. Cir. 2007). The complaint in this case does not come close to revealing an exhaustion defense.

75, 90 (D.D.C. 2014) (in Alien Tort Statute case, finding that exhaustion was not required because "recovery in Indonesian civil court … is unlikely in light of political corruption").

Defendants have failed to adduce any evidence demonstrating that proceedings in Turkey would be fair. To the contrary, in view of President Erdoğan's control over the judiciary and commitment to "perfect" relations with Saudi Arabia, it is futile for Ms. Cengiz to seek a fair trial in Turkey. Ex. A ¶ 46. In an effort to improve relations with MBS, President Erdoğan has recently caused Turkish criminal proceedings against the Saudi perpetrators to be extinguished—and in doing so, has extinguished the possibility that the perpetrators would be brought to justice anywhere.[11] There is zero chance that a civil suit against MBS and his confederates, arising out of the same murder, could be resolved fairly. *Id.* ¶ 45. President Erdoğan controls the judiciary. *Id.* ¶¶ 25, 44–45. He would retaliate against any judge who showed any signs of giving Ms. Cengiz due process, just as he retaliated against Judge Demir. *Id*. ¶ 45. Not only does this prospect of retaliation function as a strong deterrent from resolving a civil suit brought by Ms. Cengiz based on a neutral application of governing law, but most judges in Turkey would also be biased against Ms. Cengiz in the first place, as they have been selected because of their loyalty to the President and his party. *Id*.[12] Ms. Cengiz cannot obtain a fair trial unless this case proceeds in the United States. Defendants have not come close to meeting their burden to prove otherwise.

---

[11] Not even MBS contends that proceedings in Saudi Arabia against the perpetrators are fair. *See* Dkt. No. 21 at 44 n.40. Nor could he. *See, e.g.*, Bureau of Democracy, Human Rights, and Labor, *2021 Country Reports on Human Rights Practices: Saudi Arabia* 14, U.S. Dep't of State, https://www.state.gov/reports/2021-country-reports-on-human-rights-practices/saudi-arabia (last visited Oct. 12, 2022) (noting that the Saudi judiciary "was reportedly subject to influence" and providing the example that "[t]he Specialized Criminal Court and the Public Prosecutor's Office were not independent entities, as they reportedly were required to coordinate their decisions with executive authorities, including the king and crown prince"); Ex. A ¶¶ 31, 34.

[12] *See* Perilli, *Judicial Independence & Access to Justice* at 33 ("800 of the 900 newly appointed judges have direct links to the ruling Justice and Development Party (AKP)."); Ex. A ¶ 45.

## CONCLUSION

This Court should deny Defendants' motion to dismiss Ms. Cengiz's TVPA claim because Ms. Cengiz has satisfied the exhaustion requirement. If the Court has any doubt on that score, it should resolve the issue at the summary judgment stage.

Dated: October 18, 2022               Respectfully submitted,

/s/ *Keith M. Harper*
Keith M. Harper (D.C. Bar 451956)
Adam G. Unikowsky (D.C. Bar 989053)
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, D.C. 20001
Telephone: (202) 639-6045

*Counsel for Plaintiffs Hatice Cengiz and Democracy for the Arab World Now, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk using the CM/ECF filing system, which sent notice of filing to all counsel of record.

/s/ *Keith M. Harper*
Keith M. Harper (D.C. Bar 451956)

*Counsel for Plaintiffs Hatice Cengiz and Democracy for the Arab World Now, Inc.*