IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HATICE CENGIZ, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>MOHAMMED BIN SALMAN, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:20-cv-03009 |

**PLAINTIFFS' RESPONSE TO THE GOVERNMENT'S STATEMENT OF INTEREST**

**INTRODUCTION**

Under the unprecedented circumstances of this case, the Court should not dismiss the claims against Defendant Mohammed bin Salman ("MBS") on the basis of head-of-state immunity. The Executive Branch can decide to recognize MBS as Saudi Arabia's head of government, but that decision does not compel this Court to accede to MBS's blatant attempt to manipulate this Court's jurisdiction and thereby secure impunity for the horrific murder he ordered.[1] Although U.S. courts have historically deferred to suggestions of head-of-state immunity by the Executive Branch, this case differs fundamentally from any other case in which head-of-

---

[1] The U.S. government and the international community have already recognized MBS's culpability. *See, e.g.*, Office of the Director of National Intelligence, *Assessing the Saudi Government's Role in the Killing of Jamal Khashoggi* (Feb. 11, 2021), https://www.dni.gov/files/ODNI/documents/assessments/Assessment-Saudi-Gov-Role-in-JK-Death-20210226v2.pdf; Human Rights Council, *Annex to the Report of the Special Rapporteur on Extrajudicial, Summary or Arbitrary Executions: Investigation into the Unlawful Death of Mr. Jamal Khashoggi* (June 19, 2019), https://www.ohchr.org/sites/default/files/HRBodies/HRC/RegularSessions/Session41/Documents/A_HRC_41_CRP.1.docx.

1

state immunity has ever been at issue. Just six days before the deadline for the United States to submit its views on head-of-state immunity, MBS's father, King Salman bin Abdulaziz Al Saud, unilaterally altered Saudi Arabia's governing charter and appointed MBS "Prime Minister."[2] The King's Order changed MBS's title, but it preserved the King's role as "ultimate arbiter" over all Saudi government authorities.[3] It is apparent—and neither MBS nor the State Department have seriously disputed—that MBS's appointment was made with the deliberate attempt to manipulate this Court's jurisdiction. No comparable appointment has occurred in the history of international law.

Plaintiffs acknowledge the Executive Branch's authority to decide whether to recognize MBS as Saudi Arabia's head of government, unfounded as that decision may be.[4] But it does not inexorably follow that MBS is beyond the reach of U.S. courts. Deciding the legal effect of the government's decision remains a legal decision for this Court to make, based on principles of customary international law. No principle of customary international law requires courts to confer head-of-state immunity when the appointment was made under the irregular circumstances of this case. To the contrary, granting immunity would undermine the principles of comity under which

---

[2] *See* Dkt. 44 at 1-2; *see also* Royal Order A/61, Dkt. 45-2 at 3.

[3] Basic Law of Governance, Art. 44, The Embassy of The Kingdom of Saudi Arabia, https://www.saudiembassy.net/basic-law-governance (last visited Nov. 27, 2022) (hereinafter Saudi Basic Law of Governance).

[4] The government's filing takes MBS's role as head-of-government as a premise; it provides zero justification for the conclusion that he is actually the head of the Saudi government. This silence is deafening given the extensive briefing this Court has received on Saudi law. Moreover, the government fails to explain whether it now is of the view that the sovereign monarch in an absolute monarchy is no longer head of government or, instead, that there are now two heads of government. Either position is both remarkable and *sui generis.* If the latter, furthermore, how many heads of government can there be in the United States' view? Can King Salman also simply declare Defendant Saud al-Qahtani another "Prime Minister" and therefore a third head of government?

customary international law rests. In this rarest of cases, the Court should decline to shield MBS for his ordering of the murder of US-resident Jamal Khashoggi.

## ARGUMENT

### I. This Court Should Not Rubber-Stamp the Government's Suggestion of Immunity.

The government contends that the Court must blindly rubber-stamp its suggestion of immunity, without any analysis as to whether dismissal would comport with principles of customary international law. The government is wrong.

As the government accurately states, courts have traditionally deferred to the State Department's suggestions of immunity for foreign heads of state. *See, e.g.*, *Habyarimana v. Kagame*, 696 F.3d 1029, 1032-33 (10th Cir. 2012); *Ye v. Jiang Zemin*, 383 F.3d 620, 626 (7th Cir. 2004); Gov't Br. 4-5 & nn.4-5, Dkt. 53. Indeed, courts have stated that such determinations are "conclusive" and "determinative." *See* Gov't Br. 4 n.4.

But the Court should not over-read those cases. The Supreme Court "has long stressed that the language of an opinion is not always to be parsed as though we were dealing with the language of a statute." *Brown v. Davenport*, 142 S. Ct. 1510, 1528 (2022) (internal quotation marks and brackets omitted); *see also United States v. Guertin*, 581 F. Supp. 3d 90, 93 (D.D.C. 2022) (declining to apply judicial decision containing "sweeping language that supports the Government's argument" because "judicial opinions are not statutes"), *appeal docketed*, No. 22-3011 (D.C. Cir. Feb. 24, 2022). The sweeping language in the cases cited by the government should not be interpreted to cover the unique facts of this case.

In prior cases addressing head-of-state immunity, there was no suggestion that the defendant was appointed to his office in order to manipulate the court's jurisdiction. Instead, in those prior cases, the defendant's appointment as head of state or head of government occurred

3

independent of the litigation. In those prior cases, the plaintiffs nonetheless urged courts to disregard the government's suggestions of immunity, on the ground that head-of-state immunity should be disregarded for particular classes of plaintiffs or claims. Courts have uniformly rejected those arguments, holding that once the State Department found a particular individual to be a foreign head of state or head of government, customary international law required dismissal of the plaintiffs' claims, no matter how sympathetic. *See, e.g.*, *Ye*, 383 F.3d at 626 (courts must defer to suggestions of immunity "without reference to the underlying claims of a plaintiff").

In this case, however, Plaintiffs are not seeking an equitable exception to principles of customary international law based on the nature of Plaintiffs' claims. Instead, Plaintiffs contend that under customary international law, the scope of head-of-state immunity does not extend to cases in which foreign countries are seeking to manipulate the jurisdiction of American courts. That is a *legal* argument, which this Court can and should adjudicate for itself.

*Manoharan v. Rajapaksa*, 711 F.3d 178 (D.C. Cir. 2013) (per curiam), demonstrates that courts retain the authority to entertain legal challenges to assertions of head-of-state immunity, notwithstanding the government's submission of a suggestion of immunity. In *Manoharan*, the State Department submitted a suggestion of immunity arguing that the President of Sri Lanka was immune. The D.C. Circuit recited the general proposition that a district court lacks jurisdiction to proceed in the face of a suggestion of immunity by the Executive Branch. *Id.* at 179. But the court did not stop there. Instead, it entertained (and ultimately rejected) the plaintiff's *legal* theory that customary international law did not apply because Congress has statutorily superseded customary international law via the Torture Victims Protection Act. *Id.* at 179-80.

If the government was correct that suggestions of immunity deprived the court of jurisdiction, then the D.C. Circuit's analysis of the plaintiff's legal theory would have been

4

irrelevant (indeed, the court might have lacked jurisdiction to even conduct that analysis). *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). Instead, however, the D.C. Circuit conducted a close analysis of the plaintiff's legal theory— demonstrating that courts retain their authority to decide legal claims regarding the scope of head-of-state immunity. Here, Plaintiffs contend that the scope of head-of-state immunity does not extend to situations in which foreign nations manipulate the jurisdiction of American courts. The Court has the authority to adjudicate Plaintiffs' legal argument.

## II. Customary International Law Does Not Require Immunity on the Facts of this Case.

There is no custom of granting immunity in the context of manipulative appointments such as the one here. Declaring MBS to be immune would undermine, rather than promote, principles of customary international law.

Section 66(d) of the *Restatement (Second) of Foreign Relations* (1965) recites that the "immunity of a foreign state . . . extends to . . . [a] head of government." But the Restatement is not a statute. At most, it qualifies as "common law"—that is, the "body of judge-made substantive rules, principles, and prescribed standards of conduct." *Lewis v. Mutond*, 918 F.3d 142, 145 (D.C. Cir. 2019); *id.* at 148 n.3 (D.C. Cir. 2019) (Randolph, J., concurring in the judgment) (quotation marks omitted).[5]

---

[5] Indeed, case law addressing the immunity of foreign leaders is so sparse that referring to the Restatement as "common law" may be an overstatement. *See Lewis*, 918 F.3d at 149 (Randolph, J., concurring in the judgment) (referring to neighboring subsection of Restatement as "a distillation of scant case law in this country, international treaties to which the United States may or may not be a party, the writings of law professors here and abroad, negotiated settlements of international disputes, and other non-judicial sources such as actions of our Department of State and perhaps comments in meetings of the American Law Institute" and stating that "[i]t may well be that there is not now and never was any common law of immunity for foreign officials sued in the United States").

As such, the Court should not treat the Restatement as an inflexible edict that governs all fact patterns. Customary international law and the common law are not static, but "continually evolving." *Comm. of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 940 (D.C. Cir. 1988); *see also Al Bahlul v. United States*, 767 F.3d 1, 57 (D.C. Cir. 2014) (recognizing that international law "is not static, but a continual adaptation [that] follows the needs of a changing world" (quoting *International Military Tribunal at Nuremberg*, 1 IMT 445 (1946)). *Cf. Hurtado v. California*, 110 U.S. 516, 530 (1884) ("[F]lexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law."). In deciding disputes under the common law, a judge "analyzes past judicial decisions, considers the reasons behind the decisions, comes up with a principle to explain the cases, and then applies that principle to a new case." *Lewis*, 918 F.3d at 148 n.3 (Randolph, J., concurring in the judgment) (quotation marks omitted). Different facts should lead to different outcomes, and rare facts should lead to rare outcomes. *See In re Subpoena Duces Tecum Issued to commodity Futures Trading Comm'n*, 439 F.3d 740, 751 (D.C. Cir. 2006) ("[T]he 'evolutionary' development of the common law is a product of intensely fact-sensitive judicial responses to particular and not abstract disputes.").

Under a common-law approach, immunity in this case is not warranted. The circumstances of MBS's appointment are unprecedented in the history of international law:

- The Royal Order was issued, out of nowhere, days before the deadline for the government to weigh in on MBS's immunity.
- The Royal Order created an unexplained and unprecedented "exception" to the Basic Law of Governance allowing MBS to be deemed Prime Minister.
- In its very next sentence, the Royal Order reaffirmed that the King would continue to chair the sessions of the Council of Ministers.

- In reality, the King has continued to chair sessions of the Council of Ministers.

Meanwhile, all other provisions of the Basic Law of Governance—such as the King's status as "ultimate arbiter" over all branches of government—remain in place.[6] The sole realistic explanation for these developments is that the King declared MBS to be Prime Minister to enable MBS to evade this Court's jurisdiction. Strikingly, neither MBS nor the State Department dispute this characterization of the appointment. Plaintiffs have not located, in the history of international law, any other appointment to head of government designed to avoid the jurisdiction of a foreign court.

There is no "custom" or "common-law tradition" of granting common-law immunity in the face of an obvious effort to manipulate the court's jurisdiction and shield a defendant who committed a heinous act of barbarism. In every previous case, the status-holding individual was already the sovereign at the time of the lawsuit or became the sovereign through ordinary means. *See, e.g.*, Dkt. 53 at 4 n.4 (collecting cases). Facing dramatically different circumstances here, the court should find that MBS is not immune from suit despite the government's decision to recognize him as the Saudi head of government.

Nor are the purposes of status-based immunity advanced by allowing manipulation of the U.S. judicial process as MBS has done. *See Clinton v. Jones*, 520 U.S. 681, 694 (1997) ("[T]he sphere of protected action must be related closely to the immunity's justifying purposes." (quotation marks omitted)). One central reason for head-of-state immunity is to allow heads of

---

[6] Saudi Basic Law of Governance, Art. 44. Although MBS claims that the Prime Minister is the head of government, his expert's declaration makes clear that the Prime Minister's leadership role within the Executive Authority remains subordinate in every way to the King's absolute control *over* the Executive Authority. *Compare, e.g.*, Dkt. 52-1 at 18–19 ¶ 20 (discussing the Law of the Council of Ministers, which provides that the Council of Ministers is Saudi Arabia's "executive authority"), *with id.* at 18 ¶ 19 (acknowledging that "*the King is the final authority* for the judicial, *executive*, and legislative authorities" (emphasis added)).

government to travel to foreign countries without fear of being served with process. *See, e.g.*, *Ye*, 383 F.3d at 628–29 (discussing concerns about "permitting service of process on visiting heads of state"). But this is not a concern where, as here, the purported head of government has already been served and the purpose of the appointment is to interfere with jurisdiction the court is already exercising.

Another principal justification for immunity is to promote international comity. *See, e.g.*, *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 486 (1983) ("[F]oreign sovereign immunity is a matter of grace and comity on the part of the United States, and not a restriction imposed by the Constitution."). But indulging MBS's cynical interference with this Court's jurisdiction does not advance comity. "Comity can . . . be described as a golden rule among nations—that each must give the respect to the laws, policies and interests of others that it would have others give to its own in the same or similar circumstances." *Usoyan v. Republic of Turkey*, 6 F.4th 31, 48 (D.C. Cir. 2021) (internal quotation marks omitted), *cert. denied*, No. 21-1013, 2022 WL 16542123 (U.S. Oct. 31, 2022). But there is no way the United States, or any nation governed by the rule of law, would ever seek immunity under "the same or similar circumstances." *Id*. In the United States, the President cannot autocratically declare that a family member is the "head of government" in order to evade accountability in a foreign court. Indeed, it would undermine principles of comity for the Court to declare a "custom" of defying the lawful exercise of jurisdiction by foreign courts during the pendency of litigation. Comity requires a custom of respecting foreign judicial process—and such a custom requires denying immunity here.

## CONCLUSION

MBS ordered the murder of Jamal Khashoggi to stop his political activities in this country. In an attempt to shield MBS from any accountability whatsoever, his father, King Salman,

conferred on MBS the title of Prime Minister without conferring on him the actual powers of head of government.  Nonetheless, the State Department has determined that MBS is head of government.  Plaintiffs recognize that the Court cannot question the Executive's decision to recognize MBS as a foreign head of government.  However, this designation does not mean MBS is immune from this suit under the Torture Victims Protection Act for his direct involvement in the horrific murder of Jamal Khashoggi.  MBS's attempt to manipulate the US judicial process makes this case *sui generis*.  And in these unique circumstances for the reasons stated herein, this Court should not grant MBS immunity.

Plaintiffs respectfully request that this Court decline to hold that MBS is entitled to head-of-state immunity.

Dated: November 29, 2022                                Respectfully submitted,

/s/ *Keith M. Harper*
Keith M. Harper (D.C. Bar 451956)
Adam G. Unikowsky (D.C. Bar 989053)
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, D.C. 20001
Telephone: (202) 639-6045

*Counsel for Plaintiffs Hatice Cengiz and Democracy for the Arab World Now, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk using the CM/ECF filing system, which sent notice of filing to all counsel of record.

/s/ *Keith M. Harper*
Keith M. Harper (D.C. Bar 451956)

*Counsel for Plaintiffs Hatice Cengiz and Democracy for the Arab World Now, Inc.*